[No. 34428.   Department Two.   May 8, 1958.]

*In the Matter of the Estate of* JOHN R. KRUSE, *Deceased.*

WILLARD KRUSE *et al., Appellants,* v. DAGNY M. KRUSE, *Individually and as Administratrix, Respondent.*[1]

[1]Reported in 324 P. (2d) 1088.

*Wright & Wright*, for appellants.

*Claire Wheeler Seltzer*, for respondent.

WEAVER, J.—Appellants, sons of decedent by a former marriage, contend that respondent administratrix, the surviving spouse, received more than her share of decedent's estate.

The record before us consists of the transcript containing various instruments filed in the matter of the estate of John R. Kruse, deceased, and of a statement of facts containing ten and one half pages of testimony taken at the time the administratrix presented to the court her second and final account and petition for distribution.

Respondent and John R. Kruse, now deceased, were married September 20, 1953. At the time of their marriage, it appears that Mr. Kruse owned: (a) a residence property subject to a mortgage; (b) an unimproved lot; (c) a limited amount of household furniture; and (d) a bank deposit of $833.17.

Mr. Kruse died intestate April 9, 1956, at the age of seventy-two. April 16, 1956, respondent, the surviving spouse who was then fifty-six years of age, was appointed administratrix of his estate. Two days later, appellants served a statutory request for special notice of proceedings. The first publication of notice to creditors was made April 21, 1956. May 11, 1956, the court allowed respondent, as surviving spouse, a family allowance of one hundred fifty dollars per month for her support and maintenance *for a period of seven months*, to run from April 9, 1956, the date of decedent's death, to November 9, 1956. RCW 11.52.040.

Although the statute (RCW 11.44.010) requires the administratrix to file a true inventory of the assets of the estate within one month of her appointment, she did not file it until August 8, 1956. The inventory discloses that decedent owned the following property at the time of his death: (a) a residence appraised at $9,250, subject to a

mortgage of $2,070.93; (b) an unimproved lot appraised.at $1,750, but later sold for $2,650; (c) cash in banks, accrued salary and vacation allowance, social security, and an income-tax refund totaling $1,729.09; (d) sundry household furniture appraised at $100; and (e) a cemetery lot valued at $35.

We note that the six-month period in which creditors could file claims against the estate (RCW 11.40.010) expired October 21, 1956. October 26, 1956, the superior court authorized respondent to sell the unimproved lot listed in the inventory. Sale of this lot for $2,650 cash was approved by the court on February 4, 1957.

The statute (RCW 11.56.030) permits the court to authorize the sale of estate real property at any time for specified purposes or "for such other purposes as the court may deem right and proper." However, *in the absence* from the record of respondent's petition to sell, and the testimony in support thereof, we cannot say that she was dilatory by delaying the sale of the property until after the period in which creditors could file claims; especially, since such a sale may be ordered when the court considers an interim report, as required by RCW 11.76.010, which states, in part, that

"Within thirty days after the expiration of the time for filing of claims of creditors, the executor or administrator shall make, verify by his oath, and file with the clerk of the court a report of the affairs of the estate."

Respondent waited until February 26, 1957—more than four months after the time fixed by statute—before she complied.

Respondent's next step puzzles us. It appears from the record that the estate was ready to be closed at least by February 4, 1957, the date the court confirmed the sale of the unimproved lot. Instead of making a final report and petition for distribution (RCW 11.76.030), she filed a *first* account and petition for allowance and approval of creditor's claim, allowance and approval of payments of mortgage installments, partial allowance for attorney's fee, cer-

tain expenses of administration, and an *extension* of family allowance.

This report discloses that all creditors' claims, including expenses of last sickness and funeral expenses, had previously been approved and paid, except one for $22.94 due the city of Seattle. The report also discloses that no state inheritance tax or Federal estate tax was due; that the unimproved lot had been sold; that she had made the $25-monthly mortgage payments on the residence; that the administratrix had $1,387.86 cash on hand, which (as disclosed) was more than sufficient to pay the costs of administration, including the balance of attorney's fees. Respondent petitioned for the extension of her family allowance from November 7, 1956, until May 7, 1957, "for her support and maintenance."

Appellants filed written objections to the report. They requested that the court (a) deny a continuation of the family allowance; and (b) direct the administratrix "to proceed to close this estate at once and make distribution." March 11, 1957, the trial court approved the report and continued the family allowance "for an additional five months."

We agree with respondent that appellants' failure to appeal from the order of March 11, 1957, precludes us from reviewing it at this time. Being an appealable order itself, it cannot be reviewed on appeal from a subsequent order approving final account and decree of distribution. Our conclusion is governed by *In re Schwarzwalter's Estate*, 47 Wn. (2d) 119, 120, 286 P. (2d) 699 (1955), wherein we said:

"An order providing for a family allowance is of vital importance to the widow and to the heirs of the estate. To paraphrase subdivision (6) of Rule 14, *supra*, it affects a substantial right in a civil proceeding and, in effect, determines the action or discontinues it. If the parties were compelled to await the entry of a decree of distribution (which might be entered a year or more later), the fruits of the litigation would be lost to the successful party, whether it be the widow or the heirs. Such an order was held to be appealable in *In re Cannon's Estate*, 18 Wash.

101, 50 Pac. 1021. See, also, *In re Brown's Estate,* 129 Wash. 84, 224 Pac. 678."

May 10, 1957, the court set aside to respondent an undivided 78.87 per cent interest in the residence as property in lieu of homestead.

Respondent filed her second and final account and petition for distribution May 31, 1957. It differs from her first report in two material respects. She reported that she had, on occasions, rented rooms during part of the time the estate was in probate, with a gross income of $152 and expenses of $146.72, thus netting the estate $5.28. In addition, she reported that, during coverture, the marital community had paid $750 on the residence mortgage; she claimed a marital community interest in the property to that extent.

June 28, 1957, over appellants' written exceptions, the trial court approved the final account, allowed respondent a five-hundred-dollar administratrix fee, and distributed the property.

There is merit in appellants' assignment of error that the trial court erred when it determined that the real property was impressed with a community interest to the extent of mortgage payments made during coverture. There is no evidence in the record that any of the mortgage payments were made with community funds. On the contrary, the record shows that, at the time of their marriage, decedent had sufficient separate funds to make the payments thereafter paid on the mortgage. *Jones v. Davis,* 15 Wn. (2d) 567, 568, 131 P. (2d) 433 (1942).

This assignment of error is academic, however, for respondent was not granted (nor should she have been granted) distribution upon the basis of any claim of a marital community interest in the property.

Finally, appellants assign error to the court's failure to require that respondent administratrix account to the estate for the reasonable rental value of the residence property occupied by her during the probate period. In support of this contention, they cite *In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593 (1902), *In re Foster's Estate,* 139 Wash. 224,

246 Pac. 290 (1926), and *In re Hickman's Estate*, 41 Wn. (2d) 519, 250 P. (2d) 524. (1952).

An examination of these cases leads us to the conclusion that they are not authority for appellants' contention as applied to the facts of the case before us.

At least one element is common to all three cited cases: The value of use and occupancy by the administrator was used as an offset against his *personal* claim for improvements made or moneys expended upon the estate property. This result is based on the theory (as expressed in *In re Hickman's Estate, supra*) that when the administrator "seeks equity, he should do equity."

In *In re Alfstad's Estate, supra*, decedent's sister was appointed administratrix and took possession of a saloon and lodging house. After a year and four months, she was removed as administratrix, but she continued to possess and operate the saloon and lodging house *in her own name and for her own benefit*. Three years and nine months thereafter, she was again appointed administratrix of the estate. When she made her final accounting (more than five years after her first appointment), she accounted for neither the proceeds or profits of the business nor for the rental value of the property; instead, she claimed reimbursement for more than $1,600 that she had expended in making improvements to the property and erecting an addition to the building. This court remanded the case to the trial court for further proceedings, saying:

"According to the testimony, it is obvious that the respondent is justly indebted to the decedent's estate for use and occupancy of the property thereof in a sum *at least equal* to the amount expended for improvements, and she should have been charged with the same in the settlement of her account." (Italics ours.) (p. 191)

In *In re Foster's Estate, supra*, appellant's contention was not before the court.

At the time of his death, John Foster was the owner, in his separate right, of an undivided one-half interest in the property used by him and his wife as a residence; the other half of the property was owned by his children. The ad-

ministratrix, the surviving spouse, brought this action against the tenants in common to recover money she spent from her personal funds for improvements made on the property after decedent's death and before she knew that the defendants had any interest in the property.

This court reversed and remanded the case, with instructions (1) to ascertain if the improvements made on the premises were necessary or to what extent they enhanced the value of the property; and (2) to ascertain the reasonable value of the rental of the premises and to allow the defendant tenants in common recovery for one half of that amount. The court said:

"As to the one-half [of the residence] belonging to the other cotenant, her use is a personal one, which can be offset against any claim that she has against the cotenants." (p. 228)

As to the other half of the residence belonging to the estate, the court said:

"*She may be required* at the time of her final account as administratrix to render an account as to its rental value, *if the circumstances justify*." (Italics ours.)

It is apparent that this statement is dictum and not necessary to the court's decision.

In *In re Hickman's Estate, supra*, the surviving husband was appointed executor of his wife's estate. Their residence was the wife's separate property. She devised it to a third party, subject to a life estate in her husband. The husband elected not to take under his wife's will. We affirmed the decision of the trial court (1) denying the husband a family allowance, because no abuse of discretion was shown; and (2) denying the husband's petition for property in lieu of homestead, because the statute (RCW 11.52.024) provides that such awards shall not be made "from separate property of the deceased which is otherwise disposed of by will."

This court sustained the husband's contention that his wife's separate property should be impressed with an equi-

table lien for improvements placed thereon and paid with community funds. In so doing, this court said:

> *"But since appellant* [husband] *seeks equity, he should do equity.*
>
> "From appellant's final report, it appears that he has occupied the Clarkston home since his wife's death. He is individually chargeable with the reasonable rental value thereof since July 1, 1950 (the date when the will was admitted to probate). *In re Alfstad's Estate,* 27 Wash. 175, 67 Pac. 593. His only right to possession of the property and the rents and profits therefrom arises from his appointment as executor; he has no such right of occupancy as an individual." (Italics ours.)

We are not disposed to extend the doctrine of the *Hickman* case beyond application to the particular facts upon which the decision was based; namely, that where an executor, under his wife's will, occupied a residence that was her separate property and that had been devised to a third party, he was chargeable, from the date the will was admitted to probate, with a reasonable rental value thereof as an offset against a community claim for improvements placed on the wife's separate property and paid with community funds during coverture.

In the instant case, the property is not commercial income property, as discussed in *In re Alfstad's Estate, supra;* it was not owned by decedent as a cotenant prior to death, together with other tenants in common, as in *In re Foster's Estate, supra;* it was not separate property of decedent otherwise disposed of by will, as in *In re Hickman's Estate, supra;* it is not subject to claim of lien for improvements placed thereon, as discussed in all three cases.

We find no circumstances in the record before us that would justify charging the surviving spouse with rental value of the residential property pending probate; especially, in view of the fact that at all times after decedent's death, she had an existing potential right (see *In re Small's Estate,* 27 Wn. (2d) 677, 681, 179 P. (2d) 505 (1947)) to have a substantial part thereof set aside to her as property in lieu of homestead.

If appellants have suffered a loss, it is by reason of the order of March 11, 1957, extending respondent's family allowance for an additional five months. See *State ex rel. Speckart v. Superior Court*, 48 Wash. 141, 92 Pac. 942 (1907); *In re Wind's Estate*, 32 Wn. (2d) 64, 71, 200 P. (2d) 748 (1948). They did not appeal, however, from this order.

We cannot say that the trial court abused its discretion when it allowed the surviving spouse a five-hundred-dollar fee for her services as administratrix.

The judgment is affirmed.

HILL, C. J., DONWORTH, ROSELLINI, and FOSTER, JJ., concur.

August 19, 1958. Petition for rehearing denied.