[No. 37106. Department Two. February 4, 1965.]

JANET DICKISON, *Appellant*, v. C. NORMAN DICKISON, JR., *Respondent*.*

*Reported in 399 P. (2d) 5.

*Casey & Pruzan,* by *Carl Pruzan,* for appellant.

*Llewellyn S. Jordan* (of *Jordan & Adair*), for respondent.

FOLEY, J.†—This is an appeal by plaintiff wife of that portion of the decree of divorce relating to property division, alimony, attorneys' fees and costs. Appellant contends that the trial court failed to make a just and equitable distribution of the property, and also failed to award her an adequate sum as alimony and attorneys' fees and costs.

The trial court granted a decree of divorce to appellant on its finding that

"The defendant has been guilty of cruel treatment of and toward the plaintiff and has inflicted personal indignities upon her rendering her life burdensome in that the defendant has sought the personal companionship and gratification with other women not the plaintiff. . . ."

The parties were married September 8, 1950, and have two children who, at the time of the trial, were 4 and 9 years of age. Appellant was awarded the custody of the children, alimony in the sum of $100 a month for 3 years, support money in the sum of $100 for the older child and $75 a month for the younger child, attorneys' fees in the sum of $750 and $326.85 costs, and also was awarded her separate property and part of the community property.

The trial court found that the appellant owned as her separate property a savings account in the sum of $2,450 and a seller's equity in a real estate contract, the balance of which was $5,700, payable $25 a month, and that the community owned net assets valued at $65,275. After hearing conflicting testimony from expert witnesses, the trial court fixed the values of the several pieces of real property owned by the community or in which the community had an interest, and divided the community property as follows:

The husband was awarded the community interest in Meydenbelle, Inc., valued at $25,000. He was awarded

†Judge Foley is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

other Bellevue property valued at $4,000. He was awarded another tract of property designated the "Carnation property" valued at $18,000. He was awarded other miscellaneous property, less certain liabilities, making a total award of $43,595.

The wife was awarded net community assets of $21,680, including the community home valued at $27,000, which was subject to a $6,900 mortgage. She was awarded the furniture, an automobile and other miscellaneous property. She was required to pay $970 in debts which had been incurred by her. In addition, the trial court awarded appellant her separate property of $8,150. No basis was given by the trial court for awarding appellant substantially less of the community property than was awarded to the husband.

RCW 26.08.110 empowers the court to make such disposition of the property, whether it be community or separate, as shall appear just and equitable.

While, as pointed out in *Robuck v. Robuck,* 62 Wn. (2d) 917, 385 P. (2d) 50, the law does not impel an equal or exact division of the community property, we agree with appellant that, under the evidence, it was a manifest abuse of discretion to award the respondent two-thirds of the community assets. *Wills v. Wills,* 50 Wn. (2d) 439, 312 P. (2d) 661. See, also, *Ovens v. Ovens,* 61 Wn. (2d) 6, 376 P. (2d) 839.

The trial court found the Carnation property to be of the value of $18,000. This property consists of 40 acres of unimproved land in King County. There is expert testimony in the record to support the finding. Respondent was reluctant to furnish any details concerning this property. At first he did not disclose ownership of it in his deposition. It took a searching cross-examination by appellant's counsel to get respondent to reveal that this community owned this property.

Respondent's expert testified the land would be worth only $500, due to a title defect and because it was landlocked and would require an easement, if the property were improved. Respondent, himself, also set the value at $500, and contends that the trial court set the value too high.

We feel that the appellant's proposal that she be awarded the Carnation property will result in an equitable division of the property in this case. If respondent's figures are accepted as to the value of this property, then this will still be short of an equal division of the property. Accepting the court's valuation of $18,000 will result in a more equitable distribution of the community property.

Appellant also assigns as error the trial court's finding of the value of other Bellevue property at $4,000. She contends that it should have been valued at $6,667. Respondent was also awarded an insurance policy on his life which he estimates had a cash surrender value of about $1,500. This figure was not included in computing his portion of the community property. The award of the Carnation property to appellant compensates for the inadequate award of the decree, and a consideration of these assignments are not necessary.

Meydenbelle, Inc., owns the purchaser's interest in several parcels of real estate in Bellevue totaling 200,000 square feet. This was valued at 50 cents a square foot, or $100,000.

Respondent contends that the property division was not inequitable because the projected community interest in the Meydenbelle corporation of 25.75 per cent, valued at $25,000, was too high. Respondent's expert testified that the total holdings of Meydenbelle, Inc., were worth $22,000 to $26,000. Respondent, himself, testified the holdings were worth less than $22,000.

The evidence supports the trial court's finding on the value of this community interest. While the finding refers to the community's owning a "14.75 stock interest," when the sum of $1,454.81 is paid, along with other small amounts owed by other investors, the community will own 25.75 per cent interest. The trial court accepted the values of appellant's appraiser, Mr. Schenkar, who was familiar with the property values in Bellevue.

The contention of respondent is considerably weakened by a letter he wrote to the city of Bellevue concerning the Meydenbelle property. This letter set the value at $150,000 to $200,000, and offered to sell at $150,000 to the community

for a civic center. He based this offer upon what he called "bona fide appraisals made for the purposes of financing our proposed facilities."

In conclusion, on this aspect of the appeal, we find that the award made by the trial court of the property was inequitable and this can be corrected by awarding appellant the Carnation property. The contention by respondent that the Meydenbelle property was overvalued is without merit. Although the adjustment made by this court may result in the appellant's obtaining slightly more community property than the respondent, we feel that the law does not require an exact division.

Appellant also contends that the $100 a month alimony for 3 years is inadequate. The trial court found that she had no particular training to earn additional support for herself and her family. Her obligations include $74.69 a month payable on the mortgage on the family home, plus $38.13 a month on taxes and insurance. It appears clear that her necessities would require more than the $100 a month allowed by the court.

■ The question next becomes whether the respondent's earnings are sufficient to support a larger allowance. As this court said in *McNair v. McNair,* 64 Wn. (2d) 283, 391 P. (2d) 549:

"The criterion adopted by this court for the allowance of alimony includes two factors: (1) the necessities of the wife, and (2) the financial ability of the husband. *Morgan v. Morgan,* 59 Wn. (2d) 639, 369 P. (2d) 516. . . ."

The trial court found, concerning respondent's income:

"That the only dependable source of income so far as the defendant is concerned arises from his employment which amounts to $608.00 per month, out of which he pays toward office expense $150.00 leaving him the difference, to-wit: $458.00 as available to him for the living of himself, the plaintiff and the minor children of the parties."

This finding is based upon his income as manager of the Green Building in Seattle, for which he receives $608 a month.

In all fairness to the trial court, it should be pointed out that it was very difficult to determine the income available to respondent from Dickison & Company.

Dickison & Company is a corporation which respondent operates in connection with his real estate business. Although the trial court found it was of no value in distributing this community asset to him, the company has had substantial income in past years and respondent has continually expended $150 a month on office space for the business, although he has no fixed salary arrangement. In addition, he testified that the company earned $10,000 in real estate commissions and appraisals, which, of course, were the result of respondent's labors.

The ownership of the company was in a confused state at the time of the trial. Sometime prior to the trial, respondent transferred nine shares of the stock to his father, who transferred $500 to the company. At first, respondent indicated there were only 10 shares of stock outstanding. Later, however, he indicated that there were a total of 20 shares issued, and 10 shares remained in the community. Respondent also testified he hopes to subsequently recover the nine shares by paying back the $500 to his father.

Despite the confusion over ownership, respondent was free to draw checks on the company account. He drew $900 from the company for a portion of the year 1962. The company bank account showed a balance of $4,475, from which respondent withdrew a $3,000 check shortly before the trial. It would appear that the court should have included at least this amount as a community asset or as income for the subsequent year. It also appears from the record that the $150 which the court deducted from respondent's monthly earnings was rent for the Dickison & Company office in the Green Building. Therefore, it should not have been deducted from the monthly earnings of the respondent for managing the Green Building.

The operations of Dickison & Company are detailed only for the purposes of showing that respondent's income in the past has been substantial from this company. This income is in addition to the $608 a month he received for managing

the Green Building. There appears to be no reason why this income will not continue in the future. In view of the earnings of this company through the efforts of respondent, of over $10,000 for a 2-year period, it appears that respondent's income is substantially more than that found by the trial court and consequently will support a larger alimony award. The testimony also shows respondent lives with his parents and does not pay rent. The alimony is increased from $100 to $175 a month for the 3-year period.

In view of the additional award to appellant of the Carnation property and the alimony increase, we do not find it necessary to discuss appellant's contentions concerning payment of accrued debts, attorneys' fees or the community obligation on the note owed to respondent's father.

It does appear, however, that appellant should have been awarded the $250 expert fee which she was required to pay to her appraiser, and the decree is so modified. The decree should also be modified to require the husband to name the children as beneficiaries of his insurance so long as he is liable for their support.

Appellant will be allowed attorneys' fees in the sum of $750 and her costs on appeal. The decree is modified as heretofore set forth and the trial court is directed to enter a decree in accord with the views herein expressed.

FINLEY, WEAVER, OTT, and HAMILTON, JJ., concur.