[No. 39211.    Department One.    April 25, 1968.]

*In the Matter of the Estate of* DAN SMITH, *Deceased.*
BETTY ROWE *et al., Appellants,* v. HELENA SMITH,
*Respondent.**

*Jackson, Ulvestad & Goodwin,* by *Thor P. Ulvestad,* for appellants.

*Jerry T. Haggarty,* for respondent.

ROSELLINI, J.—The respondent, surviving spouse of Dan Smith, deceased, petitioned the superior court for clarifica-

*Reported in 440 P.2d 179.

tion of two paragraphs of his will, contending that property referred to therein as separate property of the testator was in fact community property. The appellants, daughters of Dan Smith by a prior marriage, to whom he bequeathed 75 per cent of his separate property, opposed this contention of the widow.

The trial court found that the earnings of the truck parts business which Smith conducted as a sole proprietorship throughout and before his marriage, were community property, those earnings which were attributable to his skill and labor having been hopelessly commingled with those which were attributable to the inventory which existed at the time of the marriage and which had a probable value of approximately $6,900;[1] that his separate funds and community funds were commingled in his bank accounts, with no attempt to keep them segregated, and that therefore the funds contained in these accounts were community property except to the extent that the evidence showed them to be separate funds.

Having traced the proceeds of the sale of certain property which the deceased owned prior to his marriage, the trial court found that $16,666.67 in one bank account was separate property. The appellants were thus held to be entitled to 75 per cent of this amount plus 25 per cent of the remainder of the funds, which was community property.

The appellants challenge the court's findings as to the nature of the property in question. They concede that the deceased did deposit all of his earnings in bank accounts which were not segregated as to community and separate property. They contend, however, that the funds in these accounts were separate property, rather than community property, because the deceased regarded them as such and never "attributed" them to the community.

■ The rule is well settled that, where the separate property in question is an unincorporated business with

---

[1]The value of the inventory in 1964 had increased to approximately $20,000. The business was sold during the following year and the proceeds were placed in a bank account.

which personal services ostensibly belonging to the community have been combined, all of the income or increase will be considered as community property in the absence of a contemporaneous segregation of the income between the community and the separate estates. *Hamlin v. Merlino,* 44 Wn.2d 851, 272 P.2d 125 (1954); *In re Witte's Estate,* 21 Wn.2d 112, 150 P.2d 595 (1944); *Salisbury v. Meeker,* 152 Wash. 146, 227 Pac. 376 (1929).

■ However the testator chose to regard it, therefore, the income from the business after the marriage was community property. It is also the rule that, where money in the bank cannot be segregated as to its sources and its separate and community natures have become so confused that the court cannot apportion them, the presumptions in favor of community property and the favor with which it is regarded require that all of such funds be attributed to the community. *Jacobs v. Hoitt,* 119 Wash. 283, 205 Pac. 414 (1922). The trial court correctly held that all of the funds in the bank accounts were community funds except those which could be identified as separate property.

■ In the case of two lots in Georgetown, a section of Seattle, which were purchased in 1956, prior to the marriage, the court was able to ascertain that the testator had sufficient separate funds at the time of the marriage to complete the payment of the purchase price of these two lots, although they were only partially paid for at that time, and therefore determined that they were separate property. The purchase price of these lots was $7,500. Two adjoining lots were purchased after the marriage for $15,000. There was no showing that separate funds were used in their purchase and the trial court correctly held that these lots were community property. All property acquired by either of the spouses during coverture is presumptively community property, and the burden is upon the party who contends that it is separate property to prove otherwise. *Rustad v. Rustad,* 61 Wn.2d 176, 377 P.2d 414 (1963). The appellants did not sustain that burden in this case.

These four lots were sold as a block for $50,000 prior to the testator's death and the proceeds, $50,000, were deposited in the community bank accounts. The trial court held that one-third of these funds was separate property and that the remaining two-thirds was community property. No evidence was offered by either side as to the individual value of the lots, other than the evidence of the prices which were paid for them. There was also no evidence introduced as to their area or the nature of the terrain, or the surroundings, and the only evidence concerning improvements thereon was testimony that a building on the two lots acquired prior to the marriage had been valued at $5,000. The building was not described.

The appellants contend, nevertheless, that an examination of the recorded plat (which is not in the record) will reveal that the lots are equal in area, and that, consequently, the trial court should have held that one-half of the proceeds of the sale was separate property. They cite no authority for the proposition that lots equal in size are presumptively equal in value, and our research has revealed no authority supporting this proposition. On the contrary, we can take judicial notice of the fact that adjoining lots equal in size are very apt to be of different value. For example, if one is improved with a $10,000 building and the other has on it a condemned building which has to be torn down at a cost of $2,000, there will be a probable difference in value of $12,000, even though all other attributes are the same. If one lot is level and the other has a hump on it which will have to be removed in order to build upon it, the cost of removing the dirt will affect the market value. If one lot sold for commercial use fronts on an arterial and is surrounded by attractive buildings, it will probably be more valuable than one behind it which faces a back street with warehouses or shacks on adjoining lots. There are of course many other pertinent factors, for example, the condition of the adjoining streets and sidewalks, whether parking is available on the street in front of the lot, and whether it is a corner or an alley lot.

As this case was presented to the trial court, the only evidence of the respective values of the lots was the prices paid for them. Lots 5 and 6 cost $7,500 in 1956. Lots 7 and 8 cost $15,000 in 1959. It is true that property values in the area may have risen in the intervening 3 years, but there is nothing in the record to substantiate such a claim, and for all that is shown there, property values may have become depressed in that period of time.

The case being in this posture, the trial court correctly determined that the only basis on which it could make an allocation of the purchase price was that of contribution. This was the method of allocating the ownership of a ranch used by this court in the case of *In re Gulstine's Estate,* 166 Wash. 325, 6 P.2d 628 (1932); *see also Heintz v. Brown,* 46 Wash. 387, 90 Pac. 211 (1907). The husband, in *In re Gulstine's Estate, supra,* had paid $3,000 of the $11,000 purchase price of the ranch with separate funds and the remainder with community funds. This court held that three-elevenths of the ranch belonged to the separate estate. It is true that, insofar as the opinion reveals, the ranch was purchased as a unit. Here the property was purchased in sections and sold as a unit. If the appellants had shown by evidence that the lots purchased with separate funds were of equal value with those purchased with community funds, they would be entitled to the increment attributable to those lots; but we cannot assume that this was the case. In the absence of such evidence, the only course left to the court is to assume that the disparity in purchase prices represents the true disparity in value and allocate the proceeds accordingly.

We are of the opinion that the trial court correctly determined the nature of funds held in the bank accounts at the time of the death of the testator and the legal effect of the provisions of the will which disposed of them.

The judgment is affirmed.

FINLEY, C. J., WEAVER and HALE, JJ., and WARD, J. Pro Tem., concur.

June 17, 1968. Petition for rehearing denied.