[No. 666-1.     Division One—Panel 2.     October 18, 1971.]

THEODORE R. RICHARDS, *Appellant,* v. DORIS RICHARDS, *Respondent,* MARY RICHARDS, *Appellant.*

*Bernard D. Greene,* for appellant Theodore Richards.

*James R. Young* and *Charles F. Diesen,* for appellant Mary Richards.

*Nickell, Quinn & Mah* and *Norman Quinn,* for respondent.

JAMES, J.—The plaintiff, Theodore R. Richards, brought this action seeking a divorce from the defendant, Doris Richards. Mary Richards, Theodore's former wife, was permitted to intervene.

By her intervention, Mary seeks a decree determining her to be the owner of a residence acquired by Theodore and Doris. Mary contends that title should be vested in her by operation of the equitable doctrine of resulting trust. Theodore agrees, but makes no argument other than by "adopting" Mary's brief. Doris asserts that the house is one of the community assets which should be awarded to Theodore as a part of his share of the community estate.

The trial judge rejected the resulting trust theory. He awarded the home to Theodore, subject to a lien in Mary's favor both for unpaid child support and for the total of the mortgage payments Mary made after this action was commenced.

■ The resulting trust doctrine which Mary relies upon is sometimes called a "purchase-money resulting trust." The rule of equity is that when property is taken in the name of a grantee who did not advance the consideration, there is a presumption that the grantee holds the legal title subject to the equitable ownership of the person who advanced the consideration. *Lalley v. Lalley,* 43 Wn.2d 192, 260 P.2d 905 (1953). However, the presumption can be overcome by evidence of contrary intention. *Creasman v. Boyle,* 31 Wn.2d 345, 196 P.2d 835 (1948).

It follows, therefore, that the essential fact which must be proved by a claimant seeking to establish a resulting trust is that he in fact paid the purchase price. G. Bogert, Trusts and Trustees § 455 (2d ed. 1964).

Mary's 1961 divorce decree required Theodore to pay her $210 a month for the support of their three minor children. In November, 1965, when Mary was living in Oregon with the children, she was experiencing problems which she felt would be lessened if the children could have a closer relationship with their father. At that time support payments were $3,000 or $4,000 in arrears. Mary testified that she asked Theodore for help and "he said he would get [her] a place to live [in Seattle] and make the payments on the house."

The evidence concerning the purchase of the house would permit a finding that the initial payment and all monthly mortgage payments thereafter were made with Doris-Theodore community funds. In fact, Doris made all of the payments for the community, including one payment after this action was begun. Doris testified, "I made a payment in January, 1969, but after that since I did not get any money from my husband, I wasn't going to make payments on his ex-wife's house. I had enough trouble making payments on my own house. I mean, that is too much. He can support his own ex-wife."

Mary concedes that she made no direct payments until she learned that Doris would no longer pay. However, Mary contends that since Theodore was in arrears, the

mortgage payments should be considered payments in lieu of child support. It follows, Mary contends, that these payments were *produced* by her.

It is not necessary that a resulting trust claimant pay the purchase price *directly*. But the claimant must carry the burden of proving that he *produced* the consideration paid and that he did so *at the time* of the delivery of the instrument of conveyance. G. Bogert, Trusts and Trustees § 456 (2d ed. 1964). It is therefore Mary's burden to establish that the community funds were paid in her behalf.

The evidence clearly supports a finding that the house was not purchased for Mary's ownership. In fact, Mary testified as follows:

Q When you moved there, did you know who the owner of the house was?

A No, I assumed it was Mr. Richards.

Q Was any agreement made between you and Mr. Richards or Doris Richards about whether you had to pay rent for the house or whether he would continue to make child support payments to you?

A It was my understanding he would pay the mortgage on the house and that was it.

Q Did you make any agreements with him in regard to the child support of $210 a month?

A Well, I assumed that the rest of it would not be made since he was making the mortgage payments.

It is undisputed that Doris and Theodore considered the house as a community asset. Community funds were expended for taxes, insurance and repairs, as well as for the purchase payments. Further, Doris and Theodore treated the house as a community asset for income tax purposes.

Since the evidence would support a finding that the purchase payments were not made in Mary's behalf, and it was not intended that she be the owner of the house, the trial judge did not err in refusing to apply the resulting trust doctrine.

Concerning the primary action for divorce, Theodore contends that he should have been granted the decree. He offers no argument other than disagreeing with the trial

judge's findings as to fault. The *Thorndike* principle precludes our questioning the findings because they are supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). In any event, as observed in *Belmondo v. Belmondo,* 3 Wn. App. 958, 480 P.2d 786 (1970), Theodore received that which he sought—a divorce.

Theodore further asserts that the trial judge erred in finding him to be the father of the child born to Doris during the pendency of the divorce action; in awarding custody of an older child to Doris; and in requiring him to pay support for the two children.

■ The presumption of legitimacy of a child born in wedlock is one of the strongest known to the law and can be overcome only by conclusive evidence. *Pierson v. Pierson,* 124 Wash. 319, 214 P. 159 (1923). Whether the presumption has been rebutted is a factual question. Substantial evidence supports the trial judge's finding that Theodore fathered the youngest child. *Thorndike* precludes further review.

■ Because the complexities inherent in child custody matters defy precise definition, let alone categorically sound solutions, *Chatwood v. Chatwood,* 44 Wn.2d 233, 266 P.2d 782 (1954), a trial judge's findings and conclusions will not be reversed unless the evidence clearly preponderates against them. *In re Walker,* 43 Wn.2d 710, 263 P.2d 956 (1953). Substantial evidence supports the placing of the older child with Doris.

■ Theodore's brief is primarily devoted to attacking the trial court's disposition of property. An appellate court will not interfere with a trial judge's disposition of the property in a divorce action unless there has been a manifest abuse of discretion. *Rehak v. Rehak,* 1 Wn. App. 963, 465 P.2d 687 (1970). To conclude that the trial judge manifestly abused his discretion, an appellate court must find that no reasonable man would have ruled as the trial judge did. *Fite v. Fite,* 3 Wn. App. 726, 479 P.2d 560 (1970). No useful purpose will be served by our reviewing the prop-

erty disposition in detail. We find it to be fair and equitable. There was no abuse of discretion. *Dunlap v. Dunlap*, 4 Wn. App. 393, 483 P.2d 140 (1971).

■ Finally, Theodore attacks the award of $5,000 to Doris for attorney's fees. As observed in *Koon v. Koon*, 50 Wn.2d 577, 313 P.2d 369 (1957), a wife is not entitled to free litigation. However, where property must be divided, a decision concerning the allowance of attorney's fees cannot be isolated. The trial judge must necessarily consider the costs of litigation in making an equitable disposition of property.

In disposing of the community property, the trial judge felt impelled to require Doris to pay over $6,000 in community obligations. He did so because of his conclusion that Theodore could not be relied upon to liquidate the community's debts.

The trial judge found as a fact

[t]hat plaintiff husband initiated this action for divorce in December of 1968. That there followed 15 months of protracted and intensive litigation prior to the matter coming to trial on March 3, 1970 which trial lasted four days. The original file herein contains 187 documents; that 13 depositions were taken and counsel for the respective parties appeared on an average of every other week during the course of the 15-month period of litigation either on motions or oral hearings in representing their clients.

Finding 11.

We are satisfied that in all respects the trial judge's findings of fact are supported by substantial evidence, and that in all respects his conclusions of law are supported by the findings.

Affirmed.

FARRIS, A.C.J., and PEARSON, J., concur.

Petition for rehearing denied November 18, 1971.