[No. 941-1. Division One—Panel 1. July 24, 1972.]

ELDEN D. POLLOCK, *Respondent,* v. MARGARET POLLOCK, *Appellant.*

WILLIAMS, J., dissents by separate opinion.

*Cartano, Botzer & Chapman* and *John D. Cartano,* for appellant.

*Richard F. Schacht,* for respondent.

HOROWITZ, C.J.—This is an appeal and cross-appeal from a decree awarding a divorce to each party, settling their property rights, providing for alimony to the wife, and awarding her an attorney's fee and costs.

Plaintiff, Elden D. Pollock, a widower 53 years old, and his wife, Margaret, a divorcee about 50 years of age, were married in February 1953. Plaintiff was a resident of Mount Vernon, Washington, where he maintained a home for himself and two of his children, 6 and 4 years of age. Plaintiff apparently had a separate estate valued at over $200,000, which he managed from Mount Vernon. Defendant, a resident of San Francisco, California, was employed as a successful home economist at a monthly salary of $400 to $425, plus fringe benefits. She was the mother of a grown daughter from her prior marriage. Her separate estate was a modest one valued at a little over $10,600.

Upon marriage, defendant left her employment and the parties made their home in Mount Vernon for the ensuing 17 years of their marriage. Defendant proved a good housekeeper and hostess, active in Mount Vernon social life. She did an excellent job in looking after the physical needs of the children. The latter grew to maturity during that marriage. In the later years of the marriage, the children became somewhat estranged from the defendant, and perhaps for this and other reasons the marriage became an unhappy one.

Plaintiff had informed defendant prior to marriage of his substantial estate. In the earlier years of the marriage, defendant became concerned with her economic security. Plaintiff recognized this and attempted by means of his will and provision for joint accounts to allay her fears. He did not entirely succeed.

About 1960-1961, defendant became alarmed about her husband's intention to go into a property deal with Safeway Stores, Inc. She felt that in view of his age and ill health, plaintiff was getting into an unduly large and risky lease transaction. To make the deal, plaintiff planned to withdraw the balances of the joint accounts he had provided for her protection, as he testified, "in case something happened to me." In fact, without asking defendant about the matter, he withdrew $7,000. Defendant felt she had to protect the security promised her. She withdrew approximately $35,000 from the accounts and redeposited the funds in another account in her own name. She then refused to reveal the whereabouts of the funds. Later she invested most of the money so deposited in United States savings bonds. Plaintiff then made other arrangements to raise funds needed for the deal.

In August 1969, defendant, then 65 years of age, separated from plaintiff, then 69 years of age. Following separation, plaintiff sued defendant for divorce. She counterclaimed for like relief. On December 28, 1970, the court awarded a divorce to each party. He divided approximately $383,000 of real and personal marital property. The plaintiff husband was awarded $310,206.42, and the defendant wife was awarded $72,882.90. The latter's property award included cash and securities totaling $51,405.13, part of which she had inherited from her mother. The court also awarded to the wife $300 per month alimony for a 5-year period, and $4,000 attorney's fees and costs.

Defendant appeals and plaintiff cross-appeals. Defendant's assignments of error deal with the propriety of entering the divorce decree in plaintiff's favor, and with the claimed gross insufficiency of the property and alimony

awarded to defendant. Plaintiff's sole cross-assignment of error is that defendant should not have been allowed any attorney's fee.

■ Defendant first inferentially contends she alone should have been awarded a divorce. She was awarded a divorce on the ground of mental cruelty and personal indignities rendering her life burdensome. Plaintiff was awarded a divorce *inter alia* on the ground that defendant had willfully deserted and abandoned him during August 1969 without cause. The error assigned is not argued. The disposition of the case we later make does not turn on whether defendant alone should have received the divorce. The error, if any, is harmless. *See Friedlander v. Friedlander*, 80 Wn.2d 293, 494 P.2d 208 (1972); *Skaare v. Skaare*, 52 Wn.2d 273, 324 P.2d 815 (1958).

■ Defendant's principal assignments of error rest on her contention that the property division made is grossly inequitable to her. RCW 26.08.110 empowers the divorce court to make "such disposition of the property of the parties, either community or separate, as shall appear just and equitable . . ." *DeRuwe v. DeRuwe*, 72 Wn.2d 404, 433 P.2d 209 (1967), a divorce case, states the following applicable principles concerning property division:

> Although the division of community property need not be exact, but just and equitable (*Robuck v. Robuck*, 62 Wn.2d 917, 385 P.2d 50 (1963)), with a wide latitude resting in the trial court's discretion to make the division (*Bodine v. Bodine*, 34 Wn.2d 33, 207 P.2d 1213 (1949)), more specific principles are available to aid the court in arriving at a just and equitable division in particular cases. First, the court must consider the necessities of the wife and the financial ability of the husband. *Hogberg v. Hogberg*, 64 Wn.2d 617, 393 P.2d 291 (1964). Then, it should take into consideration the age, health, education and employment history of the parties and their children, and the future earning prospects of all of them. The court should, likewise, give thought to the sources and dates of acquisition of all properties accumulated by the parties during marriage and what properties each brought into or contributed to the community property, along with the

amounts and kinds of property left to be divided at the divorce. Even when regard is had for the fault of the parties and the wrong inflicted by the one upon the other, it is the economic condition in which the decree will leave the parties that engenders the paramount concern in providing for child support and alimony and in making a property division. *Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966).

Although this court will not substitute its judgment for that of the trial court in questions of child support, custody, alimony and division of property except where there has been a manifest abuse of discretion in one particular or another (*Root v. Root,* 64 Wn.2d 360, 391 P.2d 962 (1964)), we will, if shown some abuse of discretion, correct the decree to ameliorate or remove if possible the inequities fostered by it. *Hogberg v. Hogberg, supra; Dickison v. Dickison,* 65 Wn.2d 585, 399 P.2d 5 (1965); *Stacy v. Stacy, supra.*

72 Wn.2d at 408-09.

In making the property division, the court must bear in mind the correct community or separate property status of the property to be divided. If the court does not do so, its division of the property constitutes reversible error. *Peterson v. Peterson,* 3 Wn. App. 374, 475 P.2d 576 (1970); *Fite v. Fite,* 3 Wn. App. 726, 479 P.2d 560 (1970); *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966).

 In the instant case, defendant claims she has a community interest in 15 items of property valued at $280,206.42 listed in the margin.[1] Defendant argues that

| | | |
|---|---|---:|
| [1]1. | Home property | $ 35,000.00 |
| 2. | Disney stock | 32,000.00 |
| 3. | United States Treasury notes | 20,000.00 |
| 4. | Seattle-First National Bank savings account | 10,035.62 |
| 5. | First Federal S&L savings account | 13,038.41 |
| 6. | Shoreline S&L savings account | 255.53 |
| 7. | Seattle-First National Bank checking account | 520.00 |
| 8. | Outstanding loans receivable | 8,525.14 |
| | TOTAL, items 1-8 ... 119,374.70 | |
| 9. | Skagit Drive-in Theater | 60,000.00 |
| 10. | Lyric Theater | 25,000.00 |
| 11. | Northwestern Mutual Life Insurance policy | 6,019.13 |
| | TOTAL, items 9-11 ... 91,019.13 | |
| 12. | ¼ Bothell Safeway property | 30,000.00 |

each of the items was acquired after marriage, each was presumptively community property, and that plaintiff failed to prove otherwise. She relies heavily on the tracing rule of *Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950), reading as follows:

> The burden rests upon the spouse asserting the separate character of the property acquired by purchase during the marriage status to establish his or her claim by clear and satisfactory evidence. *E. I. Dupont de Nemours & Co. v. Garrison,* 13 Wn.2d 170, 174, 124 P.2d 939, and cases cited therein. The requirement of clear and satisfactory evidence is not met by the mere self-serving declaration of the spouse claiming the property in question that he acquired it from separate funds and a showing that separate funds were available for that purpose. Separate funds used for such a purpose should be traced with some degree of particularity.

37 Wn.2d at 381-82. *In re Estate of Allen,* 54 Wn.2d 616, 343 P.2d 867 (1959), is to the same effect.

Plaintiff defends the separate property characterizations and the property division as a proper exercise of the court's discretion. However, he does not explain how the *Berol v. Berol, supra,* tracing requirements have been met. The evidence shows that, with the possible exception of property items 13, 14 and 15 totaling $39,812.59, and item 12 later discussed, property items 1 to 8, inclusive, totaling $119,374.70, are presumptively community property, and there is a community interest in or with respect to items 9, 10 and 11, the interest totaling approximately between $71,630 and $76,630. The total community interest in items 1 to 11, inclusive, is between $191,004.70 and $196,004.70. We arrive at these results, in considering defendant's contentions, as follows.

■ Following marriage, plaintiff continued to manage

| | | |
|---|---|---|
| 13. Automobiles and furniture held by plaintiff | | 5,000.00 |
| TOTAL, items 12-13 | 35,000.00 | |
| 14. ⅓ Pollock Building cash reserves | | 9,562.59 |
| 15. ⅓ Pollock Building savings account | | 25,250.00 |
| TOTAL, items 14-15 | 34,812.59 | |
| TOTAL, items 1-15 | | $280,206.42 |

his separate property successfully. He derived substantial income from the combined use of his separate property and his services. However, the community was entitled to the economic benefit of his services. The rule is that if plaintiff seeks to retain the separate character of income derived from a combination of his separate business and his post-marital personal services with respect thereto, he is required to make a contemporaneous segregation of the income so derived as between the community and his separate estate. This can be accomplished by the allocation to the community of what in effect would be a reasonable salary for his services. The allocation in the nature of a salary is then considered community income, and the balance of his income remains his separate property. As stated in *In re Estate of Smith*, 73 Wn.2d 629, 440 P.2d 179 (1968):

> The rule is well settled that, where the separate property in question is an unincorporated business with which personal services ostensibly belonging to the community have been combined, all of the income or increase will be considered as community property in the absence of a contemporaneous segregation of the income between the community and the separate estates. *Hamlin v. Merlino*, 44 Wn.2d 851, 272 P.2d 125 (1954); *In re Witte's Estate*, 21 Wn.2d 112, 150 P.2d 595 (1944); *Salisbury v. Meeker*, 152 Wash. 146, 227 Pac. 376 (1929).

73 Wn.2d at 630-31. *In re Estate of Hebert*, 169 Wash. 402, 14 P.2d 6 (1932), is to the same effect. *See generally* W. deFuniak & M. Vaughn, Principles of Community Property § 72 (2d ed. 1971); King, *The Challenge of Apportionment*, 37 Wash. L. Rev. 483 (1962); LeSourd, *Community Property Status of Income from Business Involving Personal Services and Separate Capital*, 22 Wash. L. Rev. 19 (1947).

In the instant case, as defendant points out, at no time was there an allocation in the nature of salary for plaintiff's services made to the marital community, nor did plaintiff offer any evidence as to what such a reasonable salary would have been during each of the years of the marriage.

The evidence is not too clear on the matter of plaintiff's

business accounts, which in certain instances he claimed to be the source of claimed separate property. As nearly as we can determine from the evidence concerning his bank accounts, he had a "regular business account." It is not clear whether the business account is also what he called a "control account," or an "operating account" or "theater account." In any case, some or all of his operating revenues were placed in one or more of the bank accounts described, and he drew on the business account or accounts for business and personal expenditures, including household expenditures. Plaintiff made no attempt to trace with "some degree of particularity" or by "clear and satisfactory evidence" the individual deposits and expenditures from his business account or accounts into the items of property previously listed in the margin and claimed by the defendant to be community property. Furthermore, because of "the absence of a contemporaneous segregation of the income between the community and the separate estates" (*In re Estate of Smith, supra* at 631), the acquisition of assets after marriage, even if from the proceeds of his unsegregated business or control account, must be deemed made from community income.

Even without reliance upon the tracing doctrine of *Berol v. Berol, supra,* the use of presumptions and other rules of law in determining the community or separate status of property reinforces the conclusion reached that the first 11 items of property listed in the margin are either community property or are property in or with respect to which the community has an interest.

The home property, item 1, originally plaintiff's separate property, had been converted into community property in 1963 by the community property agreement of the parties entered into under RCW 26.16.120. *See In re Estate of Verbeek,* 2 Wn. App. 144, 467 P.2d 178 (1970).

Property items 2 to 8 were each acquired during marriage and were presumptively community property. *DeRuwe v. DeRuwe, supra; In re Estate of Allen, supra; Berol v. Berol, supra; In re Estate of Dougherty,* 27 Wn.2d

11, 176 P.2d 335 (1947); *Beakley v. Bremerton,* 5 Wn.2d 670, 105 P.2d 40 (1940).

The Bothell Safeway property, item 12, was the subject of a written agreement of the parties entered into together wth two other owners. Exhibit 7. That agreement, confirmed in 1969, provided that the plaintiff and defendant "shall own and have an undivided one-fourth interest therein." Plaintiff then assigned to defendant one-half of the one-fourth interest in the Safeway lease on the property involved. Under these circumstances, the wife's interest in the one-fourth interest was not plaintiff's separate property.

The Skagit Drive-in Theater property (item 9) purchase price payments were made both before and after marriage. Lease and option payments made after marriage, in light of plaintiff's testimony, represent approximately 72 per cent of the total purchase price paid. The Lyric Theater (item 10) remodeling costs paid after marriage were between $25,000 and $30,000, no precise figures being given. The insurance premium payments on a life insurance policy outstanding at the date of the marriage (item 11) were continued after marriage. The total of these payments after marriage, based upon the relationship of the cash surrender value at marriage and about the time of the divorce, amounted to about 57 per cent of all premiums paid.

■ If post-marital payments came from community property, the community would have an interest in or with respect to the separate property involved, either for reimbursement of community funds expended or by way of equitable lien to protect the community's interest, or, as in the case of the life insurance policy, a pro rata interest in the cash surrender value based on the total post-marital premium payments divided by the total premium payments made before and after marriage. *Burch v. Rice,* 37 Wn.2d 185, 222 P.2d 847 (1950); *Leroux v. Knoll,* 28 Wn.2d 964, 184 P.2d 564 (1947); *Pekola v. Strand,* 25 Wn.2d 98, 168 P.2d 407 (1946); *Farrow v. Ostrom,* 16 Wn.2d 547, 133 P.2d 974 (1943); *Conley v. Moe,* 7 Wn.2d 355, 110 P.2d 172, 133

A.L.R. 1089 (1941); *W. T. Rawleigh Co. v. McLeod*, 151 Wash. 221, 275 P. 700, 64 A.L.R. 238 (1929); *Legg v. Legg*, 34 Wash. 132, 75 P. 130 (1904). *See DeRevere v. DeRevere*, 5 Wn. App. 741, 491 P.2d 249 (1971); *Neeley v. Lockton*, 63 Wn.2d 929, 389 P.2d 909 (1964); *In re Leuthold*, 52 Wn.2d 299, 324 P.2d 1103 (1958).

On the other hand, if the post-marital purchase price, improvement and premium payments were paid out of separate property, the separate property status of the three items would not be affected. The presumption is that if there are both separate and community funds and there are sufficient separate funds from which the payments can be made, then the payments will be presumed made from such separate funds. *In re Estate of Kruse*, 52 Wn.2d 342, 324 P.2d 1088 (1958); *National Bank of Commerce v. Lutheran Bhd.*, 40 Wn.2d 790, 246 P.2d 843 (1952); *Jones v. Davis*, 15 Wn.2d 567, 131 P.2d 433 (1942); *In re Estate of Binge*, 5 Wn.2d 446, 105 P.2d 689 (1940). *See generally* 41 C.J.S. *Husband and Wife* § 510, at 1081-82 (1944).

Lacking here is evidence of the existence of separate funds needed to make the presumption available. There is no evidence that any separate property was sold to provide moneys for the payment of the purchase price, improvements and life insurance premiums discussed. If paid from the "business account" or "control account," the moneys therein must be considered to be community moneys for the reasons stated in *In re Estate of Smith, supra*. Furthermore, lacking is clear and satisfactory evidence that post-marital payments came from the "business account" or "control account." Illustrative is the case of purchase price payments involving the Skagit Drive-in Theater property. Plaintiff, in response to a leading question, agreed they "probably" came from the business account. Such evidence is neither "clear and satisfactory evidence," nor is such evidence sufficient to show a tracing "with some degree of particularity." *Berol v. Berol*, 37 Wn.2d 380, 223 P.2d 1055 (1950).

The court further found that any community inter-

est in any community earnings was used up in payment of living expenses. The finding is not supported by substantial admissible evidence. The finding erroneously assumes the separate property status of the business account, the separate property status of the challenged items of property discussed and the income therefrom, and the admissibility of plaintiff's exhibit No. 25. Exhibit No. 25 purported to be a summary prepared by plaintiff with the assistance of his bookkeeper and accountant to show his income and expenditures on a year-by-year basis during the 17 years of the marriage. This summary purported to be based on plaintiff's "official" books and records. They are not otherwise specifically identified, nor shown to have been made accessible to defendant, nor shown to have been kept in the manner required by RCW 5.45.020 so as to be entitled to admission. Defendant objected to the admission of the exhibit as hearsay. The objection was well taken. The "official" books and records were inadmissible written hearsay as to defendant. *See Lewis v. Coleman,* 194 Wash. 674, 79 P.2d 633 (1938). A summary of inadmissible hearsay evidence is as inadmissible over objection as is the underlying inadmissible hearsay data it summarizes. *See Keen v. O'Rourke,* 48 Wn.2d 1, 290 P.2d 976 (1955); 29 Am. Jur. 2d *Evidence* § 458 (1967). The finding that community income, if any, was absorbed by living expenses, to which defendant assigns error, is not supported by substantial evidence.

The failure to bear in mind the correct status of one or more of the substantial items of property whose separate status is challenged, renders invalid the property division made. *Peterson v. Peterson, supra; Fite v. Fite, supra; Blood v. Blood, supra.* Accordingly, as stated in *DeRuwe v. DeRuwe, supra,* "we will, if shown some abuse of discretion, correct the decree to ameliorate or remove if possible the inequities fostered by it."

Before considering the relief to be afforded, we consider the related questions of alimony and attorney's fees.

When the court awarded $300 a month alimony for a

5-year period in the gross total of $18,000, he at the same time required defendant to give up certain property rights she had acquired for her economic protection in connection with the Bothell Safeway transaction in 1960-1961. To secure the signatures he needed from her, plaintiff deeded defendant a half interest in his home property, executed a community property agreement under RCW 26.16.120, and in that agreement provided that, upon his death, the home property would vest in the defendant. In addition, plaintiff assigned to her a one-half interest in the one-fourth share of the Safeway lease rentals thereafter to become due. Her one-half share amounted to $59.18 per month for a period of 15 years from the date of the tenant's possession under the Safeway lease; $263.33 per month for the ensuing 4 years and 3 months; one-half of plaintiff's share of net rentals during the following 9 months; and one-half of any net rentals thereafter receivable by plaintiff during the remaining life of the lease or any extension thereof under options contained in the lease. The assignment further provided that upon plaintiff's death, defendant surviving, she would receive, so long as she lived, all of the rentals of the property otherwise receivable by plaintiff.

At the time of the divorce decree, the wife was about 67 and the husband about 70 years of age. The life expectancy of each, depending upon the life expectancy tables used, was as follows: The husband's expectancy ranged from 8.48 to 11.86 years, and the wife's expectancy from 10 to 13.71 years. Am. Jur. 2d Desk Book, Doc. No. 140 (1962). The probabilities were that the wife, by surviving her husband, would acquire his entire interest in the home property and his entire rentals under the Safeway lease. The gross alimony awarded, therefore, was substantially less than the value of the interests she was required to give up. Furthermore, to the extent the value of the property given up exceeded the gross alimony awarded, the excess in effect reduced the $72,882.90 in real and personal property awarded to her.

Defendant at about 67 is no longer employable. She is

dependent for her living expenses on social security, the property awarded her, and the alimony. There is no showing that her need at age 67 for alimony will cease when she reaches the age of 72. *See Stacy v. Stacy,* 68 Wn.2d 573, 414 P.2d 791 (1966). Under the circumstances, alimony for a 5-year period with a life expectancy of between 10 and 13.71 years, even with the property awarded to fall back upon for financial help, could leave defendant in a worse position when the 5-year period expires than she was at the time of the decree. Accordingly, in the total relief she asks, she includes a request for permanent alimony of $500 per month.

Before describing the total relief awardable here, we deem it desirable to first consider the matter of attorney's fees. Plaintiff, on cross-appeal, contends the $4,000 attorney's fee allowance to defendant was improper because she had adequate funds with which to pay her own counsel.

The allowance of attorney's fees, either in the original divorce proceedings or in divorce modification proceedings, is discretionary. Whether the allowance will be made primarily depends upon the financial needs of the wife and the husband's ability to pay. *Coons v. Coons,* 6 Wn. App. 123, 491 P.2d 1333 (1971). There is a difference, however, in the two situations. An attorney's fee allowance in the original divorce proceedings is imposed by the responsibilities of marriage to assure the wife's day in court. In modification proceedings, however, the marriage has ceased and the allowance is made solely to assure the ex-wife's adequate representation. In either case the overall decree must be just and equitable.

In the original divorce proceedings, a divorce court cannot ignore the property division made in determining whether it is also just and equitable to make an attorney's fee allowance. The court must consider the net as well as the gross amount of the award made. If, after paying the attorney's fee, the net amount left is still a just and equitable property division, the court may decline to award any attorney's fee. If, however, the award left after payment of

attorney's fees leaves too little to be just and equitable, the court, to eliminate the inequity, may require the husband to pay his wife's attorney's fees. As stated in *Richards v. Richards,* 5 Wn. App. 609, 489 P.2d 928 (1971):

> [W]here property must be divided, a decision concerning the allowance of attorney's fees cannot be isolated. The trial judge must necessarily consider the costs of litigation in making an equitable disposition of property.

5 Wn. App. at 614. *See also Peterson v. Peterson, supra; Abel v. Abel,* 47 Wn.2d 816, 289 P.2d 724 (1955). In the instant case, without the allowance of $4,000, the property and alimony award would have been even less adequate than it is. We do not disturb it.

*DeRuwe v. DeRuwe, supra,* considered the problem of a just and equitable property division on principles pertinent here. *DeRuwe* held erroneous a divorce court's division of $865,000 between the husband and wife when all but possibly $60,000 was presumptively community property. The trial court awarded alimony to the wife until the further order of the court, but denied the wife an award of attorney's fees. The Supreme Court increased the wife's property award by $100,000, but deferred payment of the increase for 10 years, payable $10,000 annually with interest at 6 per cent per annum beginning at the 10th year until paid in full. The unpaid sum was ordered to be secured by a lien on the property awarded the husband. On appeal, as her brief shows, the wife asked for an award of attorney's fees at trial and on appeal. The Supreme Court awarded her $15,000 attorney's fees for legal services in both courts, together with her appeal costs.[2]

---

[2]The continued vitality of *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967) is evidenced by the recent citation of that case in *Baker v. Baker,* 80 Wn.2d 736, 498 P.2d 315 (1972) and *Friedlander v. Friedlander,* 80 Wn.2d 293, 494 P.2d 208 (1972). The power of an appellate court to modify the division of marital property by a divorce decree when the property division is deemed to result from a "manifest abuse of discretion" is recognized both in the cases cited in *DeRuwe v. DeRuwe, supra,* and in other cases as well. *Clark v. Clark,* 72 Wn.2d 487, 433 P.2d 687 (1967); *Lucker v. Lucker,* 71 Wn.2d 165, 426 P.2d 981

■ In determining upon a "just and equitable" property division required by RCW 26.08.110, we may properly consider as pertinent the fact that plaintiff's separate property, as well as his personal services, was a substantial factor in causing the increase in the marital property of the parties, even though, because of the rules of law discussed, the marital community acquired rights in or with respect to most of the challenged items of property. Nevertheless, the shortcomings of the limited alimony and the equities resulting from a correct characterization of the status of or with respect to the rights of the parties, lead us to conclude, in the language of *DeRuwe v. DeRuwe, supra,* "that the husband came out of the marriage with too great a share and the wife too little." 72 Wn.2d at 409. The present posture of the case calls for conclusions different from those reached below.

Accordingly, defendant's share should be increased by the gross sum of $46,000, $10,000 of which shall be paid within 60 days from the date of the remittitur, and the balance to be paid in full at the expiration of the alimony payment period or, at plaintiff's option, to be paid at the rate of $300 per month beginning with the first month following the expiration of the alimony payments required by the divorce decree. The alimony payable shall continue for the period fixed even if plaintiff should predecease the defendant. The $10,000 payment shall bear interest at the present judgment rate of 8 per cent per annum from the date it becomes payable. The payments made subsequent to the alimony period shall commence bearing interest at the present judgment rate of 8 per cent per annum beginning

(1967). Indeed, the appellate court's power to change a property distribution under such circumstances has been recently recognized in stating the general rule applicable. *Weiss v. Weiss,* 75 Wn.2d 596, 452 P.2d 748 (1969); *Mayo v. Mayo,* 75 Wn.2d 36, 448 P.2d 926 (1968); *Rogstad v. Rogstad,* 74 Wn.2d 736, 446 P.2d 340 (1968); *Beck v. Beck,* 74 Wn.2d 461, 445 P.2d 322 (1968); *Weaver v. Weaver,* 70 Wn.2d 559, 424 P.2d 637 (1967); *Morris v. Morris,* 69 Wn.2d 506, 419 P.2d 129 (1966); *Richarason v. Richardson,* 69 Wn.2d 59, 417 P.2d 157 (1966); *Root v. Root,* 64 Wn.2d 360, 391 P.2d 962 (1964); *Robuck v. Robuck,* 62 Wn.2d 917, 385 P.2d 50 (1963).

with the date when the first installment shall become payable. The installment payments shall be inclusive of interest. *See Berol v. Berol,* 37 Wn.2d 380, 223 P.2d 1055 (1950); RCW 4.56.110, as amended by Laws of 1969, ch. 46, § 1. The unpaid installments of property and alimony shall be secured by a lien, in the words of *DeRuwe v. DeRuwe, supra,* "junior only to existing encumbrances of record" on plaintiff's properties.

The attorney's fee allowed below is affirmed, notwithstanding the increase in defendant's share of marital property. It is intended that defendant receive the full benefit of the increase awarded. Defendant has neither requested nor waived an attorney's fee allowance for the services of her attorney on appeal. Accordingly, the matter is one for determination by the trial court. *See Hilsenberg v. Hilsenberg,* 54 Wn.2d 650, 344 P.2d 214 (1959).

Reversed and remanded to the superior court with directions to modify the decree of divorce in accordance with this opinion.

CALLOW, J., concurs.

WILLIAMS, J. (dissenting)—I do not believe that the Supreme Court in *DeRuwe v. DeRuwe,* 72 Wn.2d 404, 433 P.2d 209 (1967), intended to authorize the drastic renovation of a trial court's decree as undertaken by the majority in this case. It is enough that the error of the trial court in the characterization of the property be corrected. *Blood v. Blood,* 69 Wn.2d 680, 419 P.2d 1006 (1966). The cause should be remanded to the trial court to divide the property on the basis of the recharacterization.