**FILED**
**MARCH 19, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| IN RE THE MATTER OF THE | ) | |
| MARRIAGE OF EDITH LIEBRAND, | ) | No. 35551-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | UNPUBLISHED OPINION |
| FREDERIC D. LIEBRAND, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Frederic Liebrand appeals many discretionary decisions entered by the trial court in this dissolution proceeding. We affirm all trial court decisions.

## FACTS

Husband Frederic Liebrand grew up in Oklahoma and is the only surviving child of his parents. At the time of trial, Frederic was 54 years old. Liebrand holds a bachelor's degree in physics and mathematics and a bachelor of science degree in business administration. He also impressively earned a master of science degree and PhD in theoretical physics from Purdue in 1990. He has since taught physics at Walla Walla University.

Edith Liebrand was 55 years old at the time of trial. Edith was raised in Morocco

and France.  Edith attended Purdue University from 1985 to 1989.  She received a bachelor's degree in English and French literature and a master's degree in French literature.

Frederic and Edith met during graduate school at Purdue.  The couple married on December 17, 1991.  Edith was previously married and bore a son from that marriage.  Frederic and Edith Liebrand begat two children.

On her divorce from her first husband, Edith Liebrand shared custody of her son with her ex-husband, the father of the boy.  When Edith's former husband learned of Edith's engagement to Frederic, the husband sought sole custody of the child.  Frederic contributed $20,000 to $40,000 from his savings to pay for Edith's attorney fees in fighting for custody.  Frederic's parents contributed another $70,000 to $80,000 for payment of fees.

During the marriage of Frederic and Edith Liebrand, Frederic's mother and father, Esther and Clair, often transferred money to the couple's joint bank account.  After the father's death, the mother continued to transfer money to the couple.  Frederic Liebrand's parents established a trust.  After the father's death and during the remainder of her lifetime, Esther Liebrand served as trustee and was the principal beneficiary.  For one to three years during the marriage, Frederic and Edith Liebrand sent money for the care of Edith's mother in France.

Frederic Liebrand owned a house in College Place at the time of his marriage to Edith. He also owned, with his parents, a home in Indiana. In June 1995, Frederic sold his College Place house for $123,000. During this time, he also received $16,000 in wheat sale proceeds from his interest in an Oklahoma farm.

In autumn 1995, Frederic and Edith Liebrand purchased property along Stateline Road in Walla Walla and built a home there, which later required substantial remodeling. The deed to the land listed both Frederic and Edith as grantees. The lender's deed of trust also listed Frederic and Edith as owners. The couple filed a lawsuit against the remodeler of the home. The complaint in the lawsuit alleged Edith to be co-owner of the property. Frederic signed the complaint under oath and verified the truth to all allegations in the pleading.

Records show that Clair and Esther Liebrand, in February 1996, transferred $20,000 to Frederic. The elder couple transferred another $20,000 to Edith at the same time. The elder couple sent additional checks to Frederic in 1996 in the respective sums of $30,000, $10,000, and $22,300.

Edith Liebrand formerly taught French at Walla Walla University. At some unknown date, the university fired her. Frederic blames the termination of employment on Edith's purported disputatious nature.

After termination of Edith Liebrand's employment at Walla Walla University, Frederic wished for additional income for the family and conceived of Edith managing a business so she could be self-employed. The couple opened one combination A&W and Orange Julius restaurant in Walla Walla and the same combination restaurant in Pendleton. Frederic assisted in managing the restaurants.

In 1997, Frederic and Edith Liebrand obtained financing for the restaurant businesses. The lender took a mortgage on the Stateline Road residence. The mortgage listed Frederic and Edith Liebrand as owners of the home.

In 2002, the restaurant businesses failed. Frederic and Edith Liebrand filed bankruptcy. Frederic then sold a farm in Oklahoma for $250,000 and used the proceeds to retire debt.

At some unknown date, Frederic and Edith Liebrand sought to purchase a residence for their son in Seattle. Initially the couple planned to purchase a Seattle townhouse for the son in both of their names. Nevertheless, a tax lien resulting from debt incurred for the restaurants would attach to any real property purchased by Frederic, but for some unknown reason not property purchased by Edith. Therefore, the Seattle townhouse was purchased under the names of Edith and Esther Liebrand, the latter being Frederic's mother.

Since 2003, Edith Liebrand has worked as an adjunct professor at Walla Walla

Community College. The position is half-time. During the summer, Edith works fifteen hours a week at Walls Vineyards in Walla Walla. She makes $12 per hour.

Frederic Liebrand may contribute a maximum of two and one-half percent of his pay into a 401k retirement account. His employer matches this amount, raising the amount placed into the account to five percent of Frederic's earnings. According to Frederic, Edith may place twenty percent of her community college salary into a 401k retirement account.

According to Frederic, Edith's spending significantly increased in 2012 and the couple thereby incurred high credit card debt. From 2012 to 2015, Esther Liebrand paid credit card debt of Frederic and Edith Liebrand in the amount of $324,000.

Two days before separating with Frederic in September 2015, Edith damaged the couple's Toyota Camry. She struck Frederic's truck with the Camry.

Frederic Liebrand's sight is deteriorating in one eye. He undergoes chelation therapy for mercury and lead poisoning.

PROCEDURE

Frederic and Edith Liebrand separated in early September 2015. Edith filed for divorce on September 11, 2015.

Before trial, Frederic's mother, Esther Liebrand, intervened pursuant to CR 24 to assert an interest in the Seattle townhouse. Neither party objected to the intervention.

5

Esther died on December 13, 2016, before trial. The parties stipulated to substituting her estate as an intervenor.

At Esther's death, Frederic substituted as trustee for his parents' trust and became the sole beneficiary of all but 0.02 percent of the trust. At trial, the trust held a value of $916,237.

During the dissolution proceeding, Frederic Liebrand claimed the Stateline Road residence to be his separate property. He also claimed that his mother Esther owned all or half of the Seattle townhouse. Nevertheless, in a response to an interrogatory, Frederic characterized the Stateline Road residence as a community asset. In a September 2015 declaration, Frederic declared that Edith was co-owner of the Seattle townhouse.

In an effort to trace the funds used to purchase the Stateline Road property and the Seattle townhouse, each party hired a forensic accountant. The accountants reviewed Frederic's financial documentation and produced a joint report.

According to Frederic Liebrand's accountant, sufficient money came from Frederic's parents to pay for the Seattle townhouse and the down payment of the Stateline Road residence. Nevertheless, neither accountant could determine whether the parents intended the transfer of funds to be a gift solely to Frederic or to both Frederic and Edith. In the joint report, both accountants also concluded that the purchase and remodeling money for the Stateline Road residence could not be traced to separate money of Frederic

6

or to gifts from Frederic's parents. The accountants likewise could not completely trace the source of the funds used to purchase the Seattle townhouse. Funds to purchase both properties came from Frederic and Edith Liebrand's joint bank account. The money transferred by the parents went into Frederic and Edith Liebrand's joint bank account and became commingled with earnings of the couple and other community funds.

The two accountants also found that Frederic and Edith Liebrand often transferred funds between the joint account and other accounts such that the money transferred by Esther and Clair Liebrand could not be traced to any source. The accountants' report further noted that the marital couple made the mortgage payments from funds from a joint bank account.

Trial testimony focused on the separate or community character of the family residence on Stateline Road in Walla Walla and the Seattle townhouse. Trial testimony also concentrated on Edith's need, or lack thereof, for spousal maintenance.

During trial testimony, Frederic acknowledged that he purchased the Stateline Road residence during the marriage. But he testified that funds from his sale of the College Place residence he owned as separate property and sales of wheat from a family farm in Oklahoma financed the purchase of the residence. His bank statements, however, failed to trace the funds used for the purchase.

During trial testimony, Frederic averred that his mother, Esther Liebrand, purchased the Seattle townhouse. He stated that his mother several times transferred funds to the joint bank account in the name of Edith and him until the account held sufficient funds for a down payment on the Seattle property. He presented the dissolution court documents that he claimed demonstrated his mother paid expenses related to the Seattle property. The documents listed expenses and the accounts on which the expenses were incurred, but did not identify who paid the expenses.

Frederic and Edith Liebrand respectively testified about his and her financial situations. Edith testified that she was not yet financially independent. Her adjunct professor status limited her earning capacity. Frederic testified that he was the principal beneficiary of his mother's trust. The terms of the trust permitted complete distribution of trust assets to Frederic before his death. He receives $5,000 a year from a solar power investment. Documents showed that Frederic garnered a gross monthly pay of $5,600.

After trial, the dissolution court found that the Seattle townhouse and the Stateline Road residence constituted community property. The court entered findings of fact that concluded the two real estate assets to be community property. The court awarded the Seattle property to Edith and the Stateline Road residence to Frederic. The Seattle townhouse holds equity of $600,000 and has debt against it of $190,463. The court ordered the parties to split the mortgage debt owed on the townhouse. The Stateline

8

Road residence has a value of $470,000 with no debt owned on the home. The court also awarded the couple's timeshare condominium in Cabo San Lucas to Frederic.

The dissolution court found the trust to be Frederic's separate property and awarded the trust interest to him. The court awarded Edith $53,750 out of a $144,750 in Frederic's employment retirement account. Otherwise, the court awarded each party his or her respective 401k retirement accounts. The dissolution court awarded Edith maintenance of $2,000 per month for sixty months because of the length of the marriage and the income disparity between the parties.

The dissolution court also awarded Edith reasonable attorney fees and costs of $33,805. In so ordering, the court entered the following finding of fact:

> The Petitioner [Edith Liebrand] incurred fees and costs, and needs help to pay those fees and costs. The other spouse has the ability to help pay fees and costs and should be ordered to pay the amount as listed in the final order. The court finds that the amount ordered is reasonable.

Clerk's Papers (CP) at 980.

## LAW AND ANALYSIS

Frederic Liebrand assigns numerous errors to trial court rulings. He contends the court erred when granting permission to his mother and the mother's estate to intervene in the dissolution action. He also assigns error to the trial court's characterization and distribution of the Seattle rental property, the Stateline Road residence and his retirement account. He objects to the property division, the award of spousal maintenance, and the

9

award of attorney fees to Edith.

Intervention

Frederic argues that third parties cannot intervene in a dissolution proceeding. He cites *Arenson v. Arenson*, 38 Wn.2d 99, 227 P.2d 1016 (1951) for support. Accordingly, he asserts that the trial court erred by allowing his mother, Esther Liebrand, to intervene in the proceedings and the substitution of her estate as a party after her death with respect to any interest she had in the Seattle townhouse. He also argues that, because the Seattle townhouse transferred to Esther's trust upon her death, the trial court lacked personal jurisdiction to award the property because he was never served process in his capacity as the trustee. We wonder if he would assign error to the court's permission to intervene and to the lack of service if the dissolution court had awarded his mother's estate or the trust the Seattle townhouse.

We decline to address the assignments of error concerning intervention and lack of service. Frederic Liebrand did not object before the superior court when his mother sought intervention. He agreed to substitute the mother's estate as a party when the mother died. Failure to object or take exception at the trial level bars raising an issue for the first time on appeal. *State v. Theroff*, 95 Wn.2d 385, 391, 622 P.2d 1240 (1980).

Generally, issues of service must be pled as an affirmative defense or made at the time of pleading. CR 12(b)(5). Failure to raise the defense may result in its waiver.

10

*Lybbert v. Grant County*, 141 Wn.2d 29, 38-39, 1 P.3d 1124 (2000). Waiver can occur when a party either acts in a manner inconsistent with a later claim of improper service or when a party delays in raising the issue of service. *Lybbert v. Grant County*, 141 Wn.2d at 38-39. Frederic acted inconsistently when proceeding to trial without asserting the need for service. He also acted inconsistently when he stipulated to the substitution of his mother's estate, rather than the trust, without complaining that the trust, not the estate, should be substituted.

### Stateline Road Residence

Frederic admits that the Stateline Road residence was purchased during his marriage to Edith. Nevertheless, he claims the residence as his separate property because he received $139,000 on liquidation of separate assets, which he used to purchase the Stateline Road residence. According to Frederic, although the dissolution court found that he commingled his separate funds with community funds, the court may not characterize the Stateline Road residence as separate property absent a finding of "hopeless commingling." Also, although the accountants could not trace his separate funds to being the purchase money, the availability of those funds, according to Frederic, raises a presumption that the separate funds facilitated the purchase. He contends that, since he purchased the residence solely with separate assets, the property retained its character as separate property during the marriage.

11

As part of a marital dissolution proceeding, the superior court must dispose of the parties' assets and liabilities, both separate and community. RCW 26.09.050(1); *In re Marriage of Schwarz*, 192 Wn. App. 180, 188, 368 P.3d 173 (2016). Although the court may award one spouse separate property of another spouse, the court must consider the nature of the property when dividing assets. RCW 26.09.050. Therefore, before distributing assets, the dissolution court must first characterize each asset as community property or separate property.

Community property generally consists of property acquired during a marriage by either spouse or both spouses. RCW 26.16.030. Separate property is property owned by a spouse before marriage, or acquired by him or her afterwards by gift, bequest, devise, descent, or inheritance. RCW 26.16.010.

In Washington, the law determines each item of property's character as either separate or community property at the date of its acquisition. *In re Estate of Borghi*, 167 Wn.2d 480, 484, 219 P.3d 932 (2009). Separate property and its rents, proceeds, and profits retain their separate status through subsequent liquidations and transformations in form. RCW 26.16.010; *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 865, 855 P.2d 1210 (1993). However, if separate property is liquidated or changes forms, that transformation must be traceable such that the spouse that owned the originally separate property must be able to show that it was used to acquire the new property. *In re*

*Marriage of Pearson-Maines*, 70 Wn. App. at 866. The separate property character of fungible assets, such as money or stocks, may be destroyed through commingling. *In re Marriage of Schwarz*, 192 Wn. App. at 190-91 (2016).

To aide in determining an asset's character, Washington courts deploy several presumptions. 19 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY & COMMUNITY PROPERTY LAW § 10.1, at 189 (2d ed. 2015). The strongest presumption is that the marital community owns property acquired during a marriage. *In re Marriage of Skarbeck*, 100 Wn. App. 444, 449, 997 P.2d 447 (2000); HORENSTEIN, *supra*, § 10.2 at 190.

The party claiming an asset acquired during the marriage as separate property bears the burden of proof. *In re Marriage of Skarbeck*, 100 Wn. App. at 449. The claimant overcomes the marital property presumption when offering clear and convincing evidence that the property was acquired with separate funds. *In re Marriage of Schwarz*, 192 Wn. App. at 189. The claimant may not rely on self-serving testimony claiming that he acquired the property from separate funds or that separate funds were available for that purpose. *Pollock v. Pollock*, 7 Wn. App. 394, 400, 499 P.2d 231 (1972). Rather, separate funds used for that purpose should be traced with some degree of particularity. *Pollock v. Pollock*, 7 Wn. App. at 400. This must be done through tracing the property used to acquire the claimed asset back to property that belonged solely to the claimant

and not the marital community. *In re Marriage of Skarbeck*, 100 Wn. App. at 448.

Frederic Liebrand argues that the court failed to credit his tracing efforts, which he argues showed that the Stateline Road residence was purchased with separate property funds. The trial court primarily based its finding that the residence belonged to the marital community on the accountants' joint report. This report and other evidence supplied substantial evidence to support the finding. The report notes that Frederic provided no documentation showing that the property was purchased with his separate property. Showing the availability of separate funds to purchase an asset does not suffice. Due to extensive commingling, the source of the funds in Frederic and Edith Liebrand's joint account could not be traced.

Legal documents filed for a lawsuit against the homebuilder listed Edith as a co-owner of the property. Frederic initially characterized the residence as a community asset in his response to an interrogatory. The accountants' report further noted that the marital couple made the mortgage payments from funds from a joint bank account.

Since the couple purchased the Stateline Road residence during marriage, the law presumes the asset to belong to the marital community. *In re Marriage of Skarbeck*, 100 Wn. App. at 446 (2000). Because this presumption operates as an evidentiary presumption, the presumption constitutes evidence supporting the court's conclusion. HORENSTEIN, *supra*, § 10.3, at 191.

14

To combat the court's finding, Frederic emphasizes his own testimony about the source funds for the purchase of the residence and highlights that the couple lacked other funds to purchase the home. But he must present more than his testimony to show by clear, cogent, and convincing evidence the residence to be separate property. He must provide documentary evidence showing separate funds purchased the home.

Frederic argues he should benefit from a presumption that separate funds were used to purchase the property because he sold his College Place home months before the couple purchased the Stateline Road residence. He emphasizes a presumption that, if both separate and community funds exist and separate funds could purchase the asset, payments will be presumed to be made from such separate funds. *Pollock v. Pollock*, 7 Wn. App. at 404 (1972). Nevertheless, that presumption only exists when the separate property claim is supported by evidence of the existence of separate funds needed to make the presumption available. *Pollock v. Pollock*, 7 Wn. App. at 404. Frederic points only to the documentation of the sale of his previous home, which was separate property. He offers no evidence that those specific funds remained available when he purchased the Stateline Road residence months later. For all we know, the parties spent those specific funds before the purchase of the home.

Frederic also argues that the trial court's failure to find that the commingling was "hopeless" prohibits it from assigning the Stateline Road residence as a community asset.

15

In support of this standard, Frederic cites *In re Marriage of Schwarz*, 192 Wn. App. at

190 (2016). This court did employ the word "hopeless" in the opinion. Nevertheless, the

court did not necessarily state that the trial court must enter a finding of "hopeless

commingling." Regardless, the accountants inferentially determined the task of tracing

the source of the payment for the Stateline Road residence to be impossible or hopeless.

Seattle Townhouse

Frederic also challenges the court's characterization of the Seattle townhouse as a

community asset. We affirm the trial court on the same grounds as we affirm the

characterization of the Stateline Road residence.

Substantial evidence supports the trial court's characterization of the Seattle

townhouse as community property. Again, the dissolution court relied on the

accountants' joint report in reaching its finding. In the report, the accountants conclude

that they could not trace the funds to either a gift by Frederic's mother directly and solely

to Frederic. They found that Frederic and Edith Liebrand commingled funds deposited in

the joint account with community funds. Whereas, Frederic identified potential gifts

from his mother that could have sufficed to purchase the Seattle property, the extent of

the commingling and number of transfers that occurred prevented tracing the funds.

The court also heard testimony that Frederic and Edith Liebrand originally sought

to purchase the townhome together. Moreover, the Seattle property was acquired by the

16

couple during their marriage, meaning that the evidentiary presumption in favor of community property applies. Frederic submitted a declaration and interrogatories which claimed Edith co-owned the property.

Frederic contends that the trial court failed to give credence to his testimony tracing the purchase-money back to his separate property. Nevertheless, this court defers to the trial court on issues of credibility. *In re Marriage of Rideout*, 150 Wn.2d 337, 350-52, 77 P.3d 1174 (2003).

Trust

Frederic Liebrand argues that the trial court lacked jurisdiction to award his parents' trust to him. He cites *In re Marriage of McKean*, 110 Wn. App. 191, 38 P.3d 1053 (2002), in support of this argument. Presumably he claims error, even though the dissolution court awarded him all of his interest in the trust, because the court considered the availability of trust assets to him when determining how to award other property and whether to grant Edith maintenance.

We conclude that the trial court properly awarded the trust to Frederic. As already noted, all assets and liabilities of the parties, both separate and community, are before the court when it makes its allocation. *In re Marriage of Muhammed*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). The court must also consider "[t]he economic circumstances of the spouse" when the property is divided. RCW 26.09.080(4).

Retirement Account

Frederic next challenges the dissolution court's allocation to Edith of a portion of his employment retirement account. In challenging this award, he asserts that the trial court did not properly consider evidence of Edith's negative impact on the family's finances. He emphasizes the large sums of the money given to the marital couple by his parents. He highlights costs incurred during Edith's custody battle from her previous marriage, a failed business the couple started but Edith managed, and Edith's damage to the Camry. He also claims the dissolution court failed to consider his poor health and the comparatively lower contribution rate to his retirement account.

In challenging the distribution of a portion of his retirement account, Frederic isolates this one asset rather than viewing the parties' assets holistically. In a dissolution proceeding, all the parties' assets and liabilities are placed before the trial court, which must allocate them. RCW 26.09.050(1); *In re Marriage of Muhammed*, 153 Wn.2d at 803 (2005); *In re Marriage of Schwarz*, 192 Wn. App. at 188 (2016). The dissolution court considers four factors when distributing the parties' assets and liabilities:

> In a proceeding for dissolution of the marriage . . . , the court shall, without regard to misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:
> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and

18

(4) The economic circumstances of each spouse or domestic partner at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse or domestic partner with whom the children reside the majority of the time.

RCW 26.09.080. The allocation is a matter of the trial court's discretion. *In re Marriage of Muhammed*, 153 Wn.2d at 803. The division of community property need not be exact, but just and equitable, with a wide latitude resting in the trial court's discretion to make the division. *Pollock v. Pollock*, 7 Wn. App. at 398 (1972). Thus, this reviewing court need not focus on the allocation of one individual asset, such as a retirement account.

Frederic correctly notes that the trial court was permitted to consider evidence of a negative financial impact. *In re Marriage of Clark*, 13 Wn. App. 805, 808-09, 538 P.2d 145 (1975). Nevertheless, the dissolution court solely determines the weight that evidence receives. *In re Marriage of Clark*, 13 Wn. App. at 810. Whether a spouse's financial activities constitute "negatively productive conduct" is a factual question. *In re Marriage of Williams*, 84 Wn. App. 263, 271, 927 P.2d 679 (1996). By asking this court to remand for a different allocation based on conduct of Edith, Frederic in effect asks this court to substitute its judgment for that of the trial court on a disputed factual issue.

Frederic's attack to the property award based on his health and contribution rates suffers a similar fate. He is correct that these factors may be relevant. *In re Marriage of*

*Stachofsky*, 90 Wn. App. 135, 147-48, 951 P.2d 346 (1998). Nevertheless, the court need not only consider such factors. The trial court has wide discretion to ensure its award of property is just. *Pollock v. Pollock*, 7 Wn. App. at 398. Based on the evidence of constraints on Edith's earning capacity and her smaller retirement resources, we deem the trial court's decision to give little weight to Frederic's emphasized factors to fall within the dissolution court's purview. Frederic does not challenge the overall allocation of assets, and we find no error in awarding Edith a portion of Frederic's retirement pension.

Frederic's argument that Edith negatively impacted the family's finances may benefit Edith more than him. A principal factor for the trial court to consider when dividing marital assets is the economic circumstances of each spouse at the time the division of the property is to become effective. RCW 26.09.080(4). The trial court's paramount concern when distributing property in a dissolution action is the economic condition in which the decree leaves the parties. *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). The court may consider the parties' prospects for future earnings, their education and employment histories, their necessities and financial abilities, their foreseeable future acquisitions and obligations. *Friedlander v. Friedlander*, 80 Wn.2d 293, 305, 494 P.2d 208 (1972). Thus, Washington law parrots the slogan made famous by Karl Marx: from each according to his ability, to each

20

according to his needs. An inability to be financially successful in the future renders Edith more in need of marital assets now.

Maintenance

Frederic Liebrand argues that this court should reverse the spousal maintenance award because the trial court's findings do not sufficiently demonstrate that it considered the statutory factors for awarding maintenance. He also claims the dissolution court should have considered the possibility he might retire within the five-year period that he must pay maintenance. He also contends the trial court ignored Edith's negative impact on the family's finances and Edith's ability to support herself by seeking higher paying work.

RCW 26.09.090 demands that the trial court consider six factors when determining whether to award one spouse maintenance. The statute reads:

> (1) In a proceeding for dissolution of marriage or domestic partnership, legal separation, declaration of invalidity, or in a proceeding for maintenance following dissolution of the marriage or domestic partnership by a court which lacked personal jurisdiction over the absent spouse or absent domestic partner, the court may grant a maintenance order for either spouse or either domestic partner. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to misconduct, after considering all relevant factors including but not limited to:
> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;

21

(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

The dissolution court's paramount concern must be the economic condition in which the dissolution decree leaves the parties. *In re Marriage of Williams*, 84 Wn. App at 268.

Trial courts have the discretion to determine whether spousal maintenance is appropriate, and to issue orders accordingly. *In re Marriage of Mathews*, 70 Wn. App. 116, 123, 853 P.2d 462 (1993). This court reviews a trial court's order regarding spousal maintenance for an abuse of discretion. *In re Marriage of Valente*, 179 Wn. App. 817, 822, 320 P.3d 115 (2014). The appellant bears the burden of establishing an abuse of discretion. *In re Marriage of Valente*, 179 Wn. App. at 831-32. This court does not substitute its own judgment for that of the trial court when the record shows that the trial court considered all relevant factors and the award is not unreasonable under the circumstances. *In re Marriage of Krieger*, 147 Wn. App. 952, 959, 199 P.3d 450 (2008); *In re Marriage of McDole*, 122 Wn.2d 604, 610, 859 P.2d 1239 (1993). This court will

22

not disturb decisions or findings made by the trial court when they fall within the scope

of the evidence presented. *In re Marriage of Mathews*, 70 Wn. App. at 122 (1993).

When the appellant challenges the trial court's findings on grounds related to

consideration of statutory factors, the findings must indicate that it appropriately

considered the "extremely flexible" factors set forth in RCW 26.09.090. *In re Marriage

of Washburn*, 101 Wn.2d 168, 178-79, 677 P.2d 152 (1984). The dissolution court's

findings must show it considered the factors, but nothing requires it to make specific

factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely

requires the court to consider the listed factors. *In re Marriage of Mansour*, 126 Wn.

App. 1, 16, 106 P.3d 768 (2004). A remand is necessary when the findings are too

conclusory to evaluate the dissolution court's reasoning. *In re Marriage of Monkowski*,

17 Wn. App. 816, 819, 565 P.2d 1210 (1977).

The trial court's findings demonstrate that it considered the relevant statutory

factors. Edith Liebrand addressed an award of spousal maintenance in her trial brief,

listed the factors to be considered, and analyzed the factors. During the dissolution

court's oral ruling, the court mentioned it relied on respondent's brief, but we assume the

court meant the petitioner's brief, since Frederic did not address maintenance in his trial

brief. During trial, the court heard extensive testimony concerning the parties' respective

financial situation and their established standard of living. The trial court obviously

considered the extent of the parties' resources and their ability to make income. Whereas Frederic argues that Edith should increase her income, he also highlighted at trial the impediments to Edith increasing her income. In the findings of fact, the court declared that it based the award on the "length of the marriage and the disparity in income between the parties." CP at 980.

We reject Frederic's claim that the dissolution court failed to give weight to his evidence concerning his job and his health. He never presented testimony that his health would likely preclude him from working and never presented testimony of an impending termination of employment. We do not agree the court ignored Frederic's evidence just because the court did not concur in his position. This court does not second-guess the trial court as to how much weight to assign the evidence. *Meeks v. Meeks*, 61 Wn.2d 697, 698, 379 P.2d 982 (1963).

Frederic Liebrand contends that the trial court, in conflict with case precedent, imposed an obligation to pay spousal maintenance during a time that he might be retired. According to Frederic, the trial court thereby imposed an encumbrance on his retirement account. We deem this argument speculation because Frederic was only 54 years of age at the time of the dissolution court's ruling. Also, Frederic is the sole beneficiary of a trust valued at $916,237. The equities confirm the aptness of an award to Edith for spousal maintenance.

Attorney Fees

Frederic Liebrand assigns error to the dissolution court's grant of reasonable attorney fees and costs to Edith. This assignment of error suggests that he challenges any award to Edith. In the body of his brief, however, he limits his argument to the amount of attorney fees and costs awarded to Edith. Therefore, we limit our review to the amount of fees. Frederic argues that this court should reverse the attorney fees award because the dissolution court failed to enter specific findings of fact detailing how it determined the award amount. He asks for remand for a new determination of the amount.

The Washington Legislature authorized courts to award attorney fees in dissolution proceedings. RCW 26.09.140. The statute seeks to ensure that lack of access to funds does not prevent a party from accessing the courts during the dissolution. *Malfait v. Malfait*, 54 Wn.2d 413, 418, 341 P.3d 154 (1959). After considering the financial resources of both parties, a court may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending a proceeding for marital dissolution and for reasonable attorney fees. RCW 26.09.140; *In re Marriage of Mathews*, 70 Wn. App. at 125 (1993).

Because of the litigious nature of this dissolution proceeding, we assume that Frederic objected to an award of reasonable attorney fees and costs in favor of Edith.

25

Because the sum awarded by the dissolution court appears reasonable based on the amount of work expended by attorneys on both sides, we do not, however, assume that Frederic objected to the requested amount being reasonable.  Regardless, Frederic has not identified in his brief any objection he made before the trial court as to an award of fees, let alone the reasonableness of the fees requested by Edith.

Failure to object or take exception at the trial level bars raising an issue for the first time on appeal.  *State v. Theroff*, 95 Wn.2d at 391 (1980).  A party's brief must support his argument by citation to the relevant parts of the record.  RAP 10.3(a)(6).  When the appellant does not support an argument by citation to the relevant portion of the record, the appellant waives the argument.  *Keever & Associates, Inc. v. Randall*, 129 Wn. App. 733, 741, 119 P.3d 926 (2005).  The record must show an objection to a ruling challenged.  *Sainsbury v. Wapato Fruit & Cold Storage Co.*, 132 Wash. 455, 459, 232 P. 331 (1925).  Because Frederic has failed to show any objection in the trial court record to the reasonableness of the award, we deny review of this assignment of error.

Edith also seeks an award of attorney fees on appeal under RAP 18.1.  She notes the disparity in the income and assets of the parties.  Edith has filed a declaration detailing her financial situation.

Like the trial court, this court may award reasonable attorney fees and costs if we find that one spouse meets RCW 26.09.140's criteria.  *In re Marriage of Rideout*, 150

No. 35551-9-III
*In re Marriage of Liebrand*

Wn.2d at 357 (2003). In doing so, the court must consider the parties' relative financial circumstances. *In re Marriage of Rideout*, 150 Wn.2d at 357. We have considered the relative financial circumstances of the parties and grant Edith fees on appeal. This court's court commissioner will determine the reasonable amount to be awarded.

CONCLUSION

We affirm all rulings of the dissolution court. We grant Edith Liebrand an award of reasonable attorney fees and costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

I CONCUR:

_____
Korsmo, J.

27

No. 35551-9-III

SIDDOWAY, J. (concurring) — I am in complete agreement with the majority opinion. I write briefly to address Frederic Liebrand's mistaken suggestion that this court's (and this author's) use of the expression "hopeless commingling" in *In re Marriage of Schwarz*, 192 Wn. App. 180, 190, 368 P.3d 173 (2016), created a new standard.

As the opinion in *Schwarz* points out, "commingling" in the ordinary sense can include any commingling or mixing together of property, even if it is possible to trace which property came from a community source and which came from a separate source. *See id.*, at n.2. The distinction made in *Schwarz* was between assets that have been commingled but can be traced, and those that cannot be traced. "Hopelessly commingled" as used in *Schwarz* means not traceable—nothing more.

The trial court found that payment for the Stateline Road residence could not be traced to separate property. III Report of Proceedings at 491-92. There was no need for the court to make the corollary finding that community and separate contributions were hopelessly commingled.

_____
Siddoway, J.