IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Marriage of | ) | |
| | ) | No. 37742-3-III |
| JUDITH K. TULLENERS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ANDRE J. TULLENERS, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. —

This marital dissolution reaches us a second time. The first appeal resulted in a published opinion. *In re Marriage of Tulleners*, 11 Wn. App. 2d 358, 453 P.3d 996 (2019). The dispute between the parties concerns the distribution of the parties' assets, particularly retirement accounts. One primary question in both appeals concerns the propriety of the dissolution court's award of a *Nuss*-type credit to the husband, Andre Tulleners. Pursuant to *In re Marriage of Nuss*, 65 Wn. App. 334, 341, 828 P.2d 627 (1992), trial courts may consider the origin of property as one spouse's separate property when appropriate to justify awarding a disparate share of the property to that spouse. Because we are unable to determine the validity of the credit and its amount, we remand for further proceedings.

FACTS

Judith and Andre Tulleners married on November 29, 1997, in what was a second marriage for both. At the time of their dissolution trial, both parties were in their early seventies and retired. After Judith filed her first appeal, Andre died, and his estate was substituted as respondent. We refer to the Estate of Andre Tulleners, however, in this opinion as Andre Tulleners.

The facts arise from trial testimony. Andre Tulleners worked thirty-two years for Williams Companies until his retirement on May 31, 2006. Williams, a Fortune 500 company, engages in natural gas processing, petroleum generation, electricity generation, and transportation. The corporation's stock trades on a public exchange. Williams Companies provided an employer funded pension program (company plan) and made available to its employees an employee funded 401(k) plan.

Andre Tulleners divorced his first wife in May 1997, six months before his marriage to Judith. At the time of the dissolution of his first marriage, his 401(k) account totaled $375,000, half of which ($187,500) the court awarded him in the earlier marital dissolution proceeding. We do not know the value of Andre's interest in the company plan at the time of his first divorce. We do not know the value of either the company plan or the 401(k) plan in November 1997, when Andre married Judith.

Williams Companies continued to contribute to the company plan and Andre continued to contribute to the 401(k) plan during the eight and one half years of Andre's

employment between the time of his marriage to Judith and his retirement. At trial, Andre offered no evidence of the respective contributions made toward his two retirement plans during the marriage.

In May 2006 on retirement, the company plan paid Andre Tulleners the lump sum of $514,106 in lieu of a pension benefit. His 401(k) plan then held $357,017.10. Andre converted his company plan lump sum and the sum in his 401(k) plan, which totaled $871,123, to two individual retirement accounts. In 2013, Andre withdrew $300,000 from his individual retirement account funds to purchase an annuity. We hereafter refer to the combined total of the individual retirement account funds and value of the annuity as Andre's retirement assets.

At trial, Judith Tulleners contended that most of the $357,017.10 value of Andre's 401(k) account at retirement constituted community property. She testified that Williams Companies' stock crashed in the early 2000s, at which time Andre told her that the value of his 401(k) plan declined to $40,000. Thus, according to Judith, about $317,017 of the 401(k) plan's value, or 89 percent of the value, at Andre's retirement should be considered to have accrued after the marriage and therefore be deemed community property. Judith averred that Andre asked that the couple rely primarily on her income to pay expenses before retirement so that he could use his wages to maximize contributions to rebuild his 401(k) account. She agreed.

Andre Tulleners denied at trial that he told Judith that his 401(k) account declined in value to $40,000 on some unidentified date after the marriage, but he acknowledged that the value dipped after marriage because his 401(k) account invested in Williams Communications stock. Williams Communications is a subsidiary of Williams Companies. The stock value decreased in the early 2000s. We do not know what, if any other, assets the 401(k) account held other than Williams Communications stock. Andre provided no information as to the lowest value of his 401(k) plan or the date on which the plan reached its bottom price. Andre agreed that he told Judith he wanted to maximize his contributions to the account. He further conceded that he maximized his contributions to the 401(k) account during the marriage to Judith.

At the time of marital separation, the value of Andre Tulleners' retirement assets totaled $767,924. We do not know how the total is divided among the individual retirement accounts and the annuity. We do not know the total value of the retirement assets at the time of trial.

During the marriage, Judith Tulleners accumulated a teacher's pension plan. She received $944.65 per month from the plan after retirement. During trial, neither party valued Judith's pension as of any date. Nevertheless, Judith's plan administrator testified that 67.6 percent of her pension plan constituted separate property and 32.4 percent community property. Aside from the teachers' pension plan, Judith also maintained an employee contribution retirement account worth $11,872 at trial.

4

The parties separated on May 5, 2016.

PROCEDURE

Judith Tulleners filed for dissolution in May 2016, after eighteen and one half years of marriage. At trial, Judith and Andre disputed how to divide their assets, including their retirement accounts and retirement assets.

In a memorandum decision after trial, the dissolution court commented on Andre Tulleners' failure to offer evidence as to the amounts and timing of employer contributions to his company plan and his contributions to his 401(k) plan between his marriage to Judith and his retirement. Based on this failure, the dissolution court characterized his retirement assets as solely community property.

In its memorandum decision, the dissolution court valued the parties' community property at $1,019,914, $767,924 of which consisted of Andre Tulleners' retirement assets. The dissolution court adopted Judith's pension plan administrator's calculation of the community property and separate property percentages of Judith's pension, and the court adjudged a 32.4 percent interest in Judith Tulleners' future pension payments to be community property and a 67.6 percent of the future payments as Judith's separate property. The court did not place a value on Judith's pension plan. The trial court valued Andre's separate property at $20,000 and Judith's separate property, not including her separate property interest in her pension plan, at $251,730. Judith's additional separate property arose from an inheritance from her mother.

In its memorandum opinion, the dissolution court divided the parties' assets as follows:

|  | Community property | Separate property |
|---|---|---|
| Andre | $718,172 plus a QDRO[1] addressing the community interest in Judith's pension payments | $20,000 |
| Judith | $301,742, plus a QDRO addressing the community property interest in her pension payments | $251,730 plus the 67.6 percent separate property interest in her pension payments |

Before the dissolution court entered written findings and a dissolution decree, Judith Tulleners questioned the equity of the court's division of property, particularly the disparity in the community property awards. The dissolution court addressed Judith's demurrals at the presentment hearing. The court commented that Judith received a total community and separate property award worth $553,472, $184,500 less than the aggregate award of $738,172 to Andre. The dissolution court explained his decision by remarking that Judith failed to value her public employment pension, of which she received 67.6 percent of the payouts. Thus, since she would receive more than two-thirds of the future pension payments, her total award was actually closer in number to the total award of Andre. The court commented that it awarded Andre more of the community property in a *Nuss*-type credit to compensate for Andre's accumulating an unidentified amount in the company plan and his 401(k) plan before the marriage.

Judith Tulleners appealed to this court. She assigned error to the dissolution court's distribution of property.

During the first appeal, this court observed that the dissolution court identified two factors supporting its disproportionate award of community property to Andre Tulleners: (1) Andre's untraced separate property interest in his retirement assets, and (2) the unknown value in Judith's separate property interest in her pension. We guessed that the court sought to divide the couple's property equally after recognizing Andre's commingled retirement assets originated as separate property and after imputing to Judith an estimated value of her separate property interest in her teacher's pension.

In a published opinion, this court concluded that the dissolution court reasonably relied on the two factors to afford Andre a *Nuss*-type award, but only if evidence supported the imputed or estimated value of Judith's separate property interest in her pension plan and only if evidence supported the imputed or estimated separate property contribution to Andre's retirement assets. To determine the separate property contribution to Andre's retirement assets, the court needed to discern the lowest value that the 401(k) plan reached after marriage. The amount of this bottom value must, in turn, equal or exceed the *Nuss*-type credit granted Andre. The dissolution court also needed to enter a finding as to the amount of Andre's retirement assets, for which the court granted him a *Nuss*-type credit. Because this court did not wish for Andre to be rewarded for the failure to trace, this court directed the dissolution court to view the

evidence, as to the minimum value of Andre's retirement assets, in the light most favorable to Judith. This reviewing court also directed the dissolution court to establish a value for Judith Tulleners' separate property interest in her pension so that this court could, in turn, determine the equitable nature of the allocation of property. We added in the opinion: "The trial court will determine what further proceedings to conduct, if any, before entering additional findings." *In re Marriage of Tulleners*, 11 Wn. App. 2d at 373 (emphasis added).

On remand, the dissolution court directed Judith and Andre Tulleners to provide the values of Judith's pension interest as of the date of trial, August 8, 2017, and Andre's retirement assets as of the date of marriage, November 29, 1997. The court permitted the parties to either stipulate to the requested values or provide valuation reports from experts. The dissolution court did not direct the parties to assess the lowest value that Andre's 401(k) plan reached during the marriage.

Andre Tulleners' attorney, Craig Mason, filed a declaration that addressed Andre's retirement assets' value. Mason declared that, on May 9, 1997, Andre received one half of his 401(k) plan in his divorce from his first marriage. The one-half amount totaled $187,500. Mason requested that the dissolution court consider the stock market index changes from May 9, 1997 to November 29, 1997 when establishing a value of Andre's retirement accounts at the date of the Tulleners' marriage, on November 29.

In his declaration, Craig Mason averred that the Dow Jones index sat at 11,214.40 in April 1997 and rose to 12,438.08 by November 1997. He declared that the Standard and Poor 500 index rose from 1282.14 to 1517.18 from April 1997 to November 1997. Mason calculated that, based on the Dow Jones' growth of approximately 11 percent, Andre Tulleners' 401(k) plan increased by $20,625 by the date of marriage, bringing his plan's total value to $208,125. When employing a similar calculation based on the Standard and Poor's growth of approximately 18 percent, counsel Mason concluded that Andre's plan increased by $33,750, resulting in a total of $221,250. The average between Mason's two calculations was $214,687.50.

Andre Tulleners once again failed to supply the dissolution court with the precise value of his 401(k) plan and the precise value of his company pension plan at the time of the marriage. Andre once again failed to supply the dissolution court any evidence of the decrease in the value of his 401(k) plan resulting from the decrease in Williams Communication's stock during the marriage to Judith.

Andre Tulleners filed a declaration by actuarial analyst and Washington State University instructor Mark Lesperance, who provided a present value of Judith Tulleners' pension interest. Using the life expectancy calculator provided by the Social Security Administration, Lesperance determined that Judith had a remaining life expectancy of 13.7 years. Combining her life expectancy with the 2.8 years since the trial court's September 2017 decision yielded a total of 16.5 years of pension benefits. Lesperance

relied on the trial court's finding that Judith received $944.65 per month from her pension plan. Considering that Judith would receive 16.5 years' payments at $944.65 per month, Lesperance calculated that the total present value of Judith's pension equaled $187,040.70. The community portion, being 32.4 percent, totaled $60,627.60. Judith's separate property interest in her pension, being 67.6 percent, totaled $126,413.10.

Judith Tulleners filed a declaration from Todd Carlson, CPA, who valued Judith's pension at $135,612. Under Carlson's calculation, the dissolution court should attribute $43,545 of Judith's pension value to community property and $90,788 to Judith's separate property.

Judith Tulleners filed her own declaration, in which she expressed concern about utilizing a present value method to calculate her teacher's pension interest. Judith averred that she was diagnosed with breast cancer in 2001 and that she suffers from severe macular degeneration, causing her eyesight to deteriorate. Based on her health, Judith challenged, as unrealistic, Mark Lesperance's calculation of her life expectancy at eighty-six years of age.

The dissolution court entered a new set of findings of fact and conclusions of law. Based on an agreement by the parties, the court awarded the entire community interest in Judith Tulleners' pension to Judith, increasing her interest in the asset from 67.6 percent to 100 percent. The trial court accepted Mark Lesperance's valuation for Judith's pension interest and stated, in finding of fact 6:

> The Court accepts the valuation submitted by the estate [of Andre Tulleners], *finding the assumptions by evaluator to be appropriate*. Thus, Ms. Tulleners is to be allocated $126,413.10 of separate property and $60,627.60 of community property.

Clerk's Papers (CP) at 47 (emphasis added).

The dissolution court addressed Andre Tulleners' retirement assets in findings of

fact 9 and 10:

> 9) As of 2006, Mr. Tulleners['] "pension" account had a balance of $514,105.58. Had he left that value in the account, the Court would have allocated the remaining balance at trial as 26.5% community and 73.5% as the separate property of Mr. Tulleners. In dollars, this separate [property] equates to a value of approximately $378,000. This type of analysis is the same as the allocation method with Ms. Tulleners' pension. Accordingly, Mr. Tulleners brought significant separate assets into the marriage in 2006 when the pension was "cashed in."
>
> 10) The second retirement account was similar to a 401K. As previously noted, this account had $187,500 in it six months before the parties' marriage in 1997, and $357,017.10 at retirement in 2006. Ms. Tulleners asserts the account had decreased in value during the six months before marriage, and in fact may have had no value. The estate has supplied some evidence of the stock market trends in 1997, which shows a higher Dow Jones and Standard & Poors [sic] (S&P) in November 1997 than in March. To claim the account had little value in November 1997 strains credibility. The Court has already characterized the account as community because Mr. Tulleners could not trace the community and separate components over time (as noted above). However, for Ms. Tulleners to claim one-half of the monies generated by the pension and 401K in 2006 leaves no consideration for the separate property contributions of Mr. Tulleners.

CP at 48. In its conclusion of law 3, the trial court wrote:

> The Court recognizes that Mr. Tulleners contributed substantial separate property retirement assets to the parties' overall estate. The Court awards a <u>Nuss</u>-type credit to Mr. Tulleners in making its award.

11

("We hold the origin of community property as one party's separate property may still be considered in appropriate cases as a reason for awarding all or a disparate share thereof to that party" Nuss at page 341). This credit is not less than $378,000.

CP at 49.

The dissolution court affirmed its prior division of property, with two modifications: (1) as previously mentioned, the court granted the entire community portion of Judith Tulleners' pension interest to her such that she would receive the entire amount of all of her pension payments, and (2) it awarded Judith an additional $50,000 from Andre's retirement assets.

LAW AND ANALYSIS

Both parties appeal rulings by the dissolution court on remand. Judith Tulleners asserts assignments of error as to the procedures employed by the dissolution court and as to the substantive rulings by the court. She contends the dissolution court should not have entertained additional evidence and particularly should not have considered the declaration of attorney Craig Mason. Conversely, she argues the trial court should have allowed cross-examination of parties' experts and rebuttal testimony. We decline to address Judith's procedural challenges because she failed to object to the dissolution court's procedures before that court.

Judith Tulleners also challenges the sufficiency of evidence behind two findings of fact and complains that the dissolution court failed to explain its finding adopting

12

Andre's expert's valuation of her pension fund. Both parties challenge the dissolution

court's distribution of assets on remand as unfair. As part of her challenge, Judith

complains that the dissolution court granted Andre a *Nuss*-type credit. Because we are

unable to determine the validity of the *Nuss*-type award and the fairness of the

distribution, we remand again for further proceedings.

*Issue 1: Whether the trial court erred by requesting additional evidence on*

*remand?*

*Answer 1: We do not address this assignment of error because Judith Tulleners*

*did not assert any error before the dissolution court.*

Although Judith Tulleners argues on appeal that the dissolution court erroneously

requested additional evidence on remand, she did not raise this objection before the

dissolution court. Therefore, we deny consideration of the assignment of error.

RAP 2.5(a) governs issues raised initially on appeal. The rule declares, in relevant

part:

> The appellate court may refuse to review any claim of error which
> was not raised in the trial court. However, a party may raise the following
> claimed errors for the first time in the appellate court: (1) lack of trial court
> jurisdiction, (2) failure to establish facts upon which relief can be granted,
> and (3) manifest error affecting a constitutional right.

None of the exceptions apply to Judith Tulleners' assignment.

We also note that, in our first decision, we wrote:

13

> The trial court will determine what *further proceedings to conduct, if any, before entering additional findings*.

*In re Marriage of Tulleners*, 11 Wn. App. 2d 358, 373 (2019) (emphasis added).  Nothing in this court's opinion or mandate prohibited the dissolution court from requesting, on remand, additional evidence of the contested values.

*Issue 2: Whether the trial court erred by considering the declaration of Andre Tulleners' attorney, Craig Mason, because Mason is not an expert and, as Andre's attorney, Mason was not permitted to present evidence.*

*Answer 2: We do not address this assignment of error because Judith Tulleners did not object to the declaration before the dissolution court.*

Judith Tulleners next contends that the dissolution court erroneously considered the declaration of Andre's attorney, Craig Mason, because Mason is not a financial expert and, as a party's attorney, may not present evidence pursuant to RPC 3.7(a).  We decline to address this assignment of error because Judith failed to complain about the declaration before the dissolution court.

*Issue 3: Whether the trial court erred precluding cross-examination of the parties' experts and the introduction of rebuttal evidence?*

*Answer 3: No error occurred because the dissolution court never precluded cross-examination or rebuttal evidence.*

Judith Tulleners next asserts that the trial court wrongfully disallowed the parties

from cross-examining the financial experts and from introducing evidence rebutting the

experts' valuations. Under RAP 2.5(a), this court may disregard her assignment of error.

Judith does not posit, nor does the record support, that she requested to cross-examine

Andre's expert, Mark Lesperance, or to introduce rebuttal evidence. Therefore, we deem

the assignment waived. The record also does not show that the dissolution court imposed

such prohibitions.

*Issue 4: Whether sufficient evidence supports the trial court's findings of fact 9*

*and 10?*

*Answer 4: Yes as to finding 9. We do not know as to finding 10.*

Judith Tulleners challenges the trial court's findings of fact 9 and 10 as

unsupported by any admissible evidence. Judith also maintains that these findings of fact

violate this court's remand instructions.

This court reviews a superior court's findings of fact for substantial evidence. *In*

*re Marriage of Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial

evidence is evidence of sufficient quantity to persuade a fair-minded, rational person of

the truth of the declared premise. *In re Marriage of Wilson*, 165 Wn. App. at 340.

To repeat, the trial court's finding of fact 9 reads:

> As of 2006, Mr. Tulleners['] "pension" account had a balance of
> $514,105.58. Had he left that value in the account, the Court would have
> allocated the remaining balance at trial as 26.5% community and 73.5% as

> the separate property of Mr. Tulleners. In dollars, this separate [property] equates to a value of approximately $378,000. This type of analysis is the same as the allocation method with Ms. Tulleners' pension. Accordingly, Mr. Tulleners brought significant separate assets into the marriage in 2006 when the pension was "cashed in."

CP at 48.

Judith Tulleners does not challenge most of the factual statements found in finding 9. She agrees that Andre's pension held a balance of $514,105.58 on Andre's retirement in 2006. Further, sufficient evidence supports the trial court's calculation regarding the characterization of the balance had Andre hypothetically left the value of $514,105.58 in the account. Judith neither disputes that Andre worked for Williams Company for thirty two years nor that the parties were married for eight and one half years during his work for the company. 8.5 divided by 32 equals approximately 26.5 percent, which percentage the trial court would have characterized as community property, leaving the remaining 73.5 percent as his separate property. Finally, Judith does not dispute that Andre brought significant separate property into the marriage at the time he commingled his retirement assets. Substantial evidence supports finding of fact 9.

To repeat, the trial court's finding of fact 10 states:

> The [Andre Tulleners'] second retirement account was similar to a 401K. As previously noted, this account had $187,500 in it six months before the parties' marriage in 1997, and $357,017.10 at retirement in 2006. Ms. Tulleners asserts the account had decreased in value during the six months before marriage, and in fact may have had no value [at one time]. The estate has supplied some evidence of the stock market trends in 1997, which shows a higher Dow Jones and Standard & Poors [sic] (S&P) in

16

> November 1997 than in March. To claim the account had little value in
> November 1997 strains credibility. The Court has already characterized the
> account as community because Mr. Tulleners could not trace the
> community and separate components over time (as noted above). However,
> for Ms. Tulleners to claim one-half of the monies generated by the pension
> and 401K in 2006 leaves no consideration for the separate property
> contributions of Mr. Tulleners.

CP at 48.

The dissolution court based its valuation of Andre Tulleners' 401(k) plan at the time of marriage on its value six months earlier plus an increase in two stock market indexes during the six months. We question the validity of this valuation when the parties could have presented evidence of the increase in the stock price of the plan's major, if not only asset. Unfortunately, Andre supplied no information on Williams Communications market prices. We might rule that this finding of fact constituted error, but we deem any error irrelevant to our ruling in this second appeal.

*Issue 5: Whether the dissolution court erred by adopting, in finding of fact 6 and conclusion of law 2, Andre Tulleners' expert's valuation of Judith Tulleners' teacher's pension without explaining why it rejected Judith's expert's valuation?*

*Answer 5: No.*

Judith Tulleners argues that the dissolution court erred by accepting Andre Tulleners' expert's valuation of her pension over her expert's valuation without providing an explanation for its choice. We disagree.

A trial court need only enter findings for facts it determines have been established by the evidence. *Miller v. Geranios*, 54 Wn.2d 917, 918-19, 338 P.2d 763 (1959). Courts need not enter negative findings, or findings that certain facts have not been established. *In re Estate of Bussler*, 160 Wn. App. 449, 465, 247 P.3d 821 (2011); *Miller v. Geranios*, 54 Wn.2d 917, 919 (1959).

The dissolution court possesses discretion to determine one expert's valuation more credible than the other. This court does not reassess credibility. *In re Welfare of A.W.*, 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). Judith Tulleners cites no authority for the proposition that the trial court must explain its findings, let alone disclose why it chose one expert's valuation of property over another expert's opinion. Regardless, the dissolution court, in finding of fact 6, mentioned that it deemed the assumptions, on which expert Mark Lesperance rested his valuation, correct.

*Issue 6: Whether the dissolution court failed to follow this court's instructions on remand when the court granted a* Nuss-*type credit to Andre without viewing the credible evidence in the light most favorable to Judith and arriving at a credit of no more than the lowest value that can reasonably be found to have been brought into the marriage and preserved?*

*Answer 6: Yes.*

One of the longest-standing principles of Washington community property law is that separate property retains its separate character following marriage as long as it can be

18

clearly traced and identified. *In re Estate of Witte*, 21 Wn.2d 112, 125, 150 P.2d 595 (1944); *In re Estate of Brown's*, 124 Wash. 273, 214 P. 10 (1923). When assets in a single account cannot be apportioned to separate and community sources, the community property presumption will render the entire fund community property. *In re Estate of Smith*, 73 Wn.2d 629, 631, 440 P.2d 179 (1968); *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 866-67, 855 P.2d 1210 (1993). The burden is on the spouse claiming separate funds to clearly and convincingly trace them to a separate source. *In re Marriage of Chumbley*, 150 Wn.2d 1, 6, 74 P.3d 129 (2003); *In re Marriage of Skarbek*, 100 Wn. App. 444, 448, 997 P.2d 447 (2000).

To be consistent with this controlling authority, we held in our prior opinion that a *Nuss*-type credit could be given only if, viewing all credible evidence in the light most favorable to Judith, the value Andre brought into the marriage and *preserved, through all losses and declines in value*, is at least if not more than the credit allowed by the court. Stated differently, the credit must be no more than the lowest value that can reasonably be found to have been brought into the marriage and preserved. This most conservative approach to arriving at the credit is the only way to ensure that Andre is not rewarded for his failure to trace.

The evidence, viewed in the light most favorable to Judith, is that the approximately $187,500 value of Andre's share of the 401(k) at the time of his prior, May 1997 divorce declined in value to $40,000 in the early 2000s, because of a crash in

the price of the Williams Companies stock in which it was then invested. She contended that the value of the 401(k) account recovered largely because Andre maximized community property contributions to the account thereafter.

Publicly-available historical price information supports Judith's testimony about the decline in the value of Williams Companies' stock.[1]  For a 401(k) invested in Williams Companies stock to have declined from $187,500 in May 1997 to $40,000 would require that the stock decline to roughly 20 percent of its May 1997 value. According to historical price information, the value of Williams Companies stock did decline from its May 1997 value by that much and more during a roughly half year period in 2002 and 2003.

It is incumbent on Andre to request a sufficiently conservative credit that the court can be assured it is not rewarding him for his failure to document the community property contributions to the 401(k) and its investment performance during the marriage. Failing that, no *Nuss*-type credit should be given.

Judith Tulleners requests that, if this court remands to the trial court, this reviewing court should direct the trial court to deny any *Nuss*-type credit. We would do so but for the dissolution court's letter to counsel that outlined the questions to be

---

[1] *See, e.g.,* the 40-year stock price history for Williams Companies stock available at https://www.macrotrends.net/stocks/charts/WMB/williams/stock-price-history (See "Download Data").

resolved on remand.  The letter did not mention the need to identify this lowest

reasonable value of the 401(k) account.  Therefore, we grant, on remand, Andre one more

chance to advocate for a defensibly conservative credit.

*Issue 7: Whether the trial court abused its discretion by distributing the parties'*

*property in an unfair and inequitable manner?*

*Answer 7: We do not address this assignment of error because we otherwise*

*remand to the dissolution court to reassess the* Nuss-*type credit granted to Andre*

*Tulleners.*

In addition to challenging the viability of the *Nuss*-type credit in favor of Andre

Tulleners, Judith contests the overall fairness of the dissolution court's distribution of a

disproportionate division of community property in Andre's favor.  In a cross appeal,

Andre challenges the dissolution court's grant to Judith of additional assets during the

remand.  Because of a lack of evidence as to the lowest value of Andre' 401(k) plan and

the permissible credit, we encounter difficulty resolving each party's assignment of error.

Therefore, we decline review of the assignment at this time.  On remand, the dissolution

court should reassess the distribution of the parties' assets after determining what, if any,

*Nuss*-type award to grant Andre.

## CONCLUSION

We reverse the trial court's *Nuss*-type credit to Andre Tulleners due to insufficient

findings as to the extent to which Andre's 401(k) plan preserved its value during

marriage. We remand for Andre, and possibly Judith, to provide evidence of the lowest

value of the 401(k) plan during marriage. In the event neither party provides evidence,

the dissolution court should deny Andre any *Nuss*-type credit. We also remand for a

possible redistribution of the parties' assets.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Staab, J.